———o———

STATE OF MISSOURI, Respondent, *vs.* JOHN JAEGER, Appellant.

1. *Criminal law—Sale of wines to be drunk on premises, without license.*—Under the present statute a wine grower is not indictable for selling wine on his own premises, without a license, or for permitting it to be drunk at such place. (See act March 26th, 1868 ; act Feb. 25, 1869 ; act March 25, 1872, incorporated in Wagn. Stat. ch. 48, and compare same with § 25 of same chapter.)

2. *Statutes, construction of—Legislative will.*—In the construction of statutes the legislative will must govern.

3. *Statutes, penal—Construction of.*—A penal statute must be strictly construed, and where one class of persons are designated as subject to its penalties, all others not mentioned are exonerated.

4. *Statute, construction of—Repeals.*—Repeals by implication are never favored.

State v. Jaeger.

*Appeal from Newton Circuit Court.*

*Thrasher & Vickery, with Collier & Muench,* for Appellant.

I. The indictment should have been quashed, because it does not negative the existence of authority in defendant to sell as a "dram-shop keeper." (State vs. Brown, 8 Mo. 210 ; Neales vs. State, 10 Mo. 498 ; State vs. Haden, 15 Mo. 447 ; State vs. Hornbeck, Id. 478 ; State vs. Owen, Id. 506.)

II. Under section 29, chap. 48, Wagn. Stat., in force when this indictment was found, it was no offense on the part of defendant to permit wine, sold on the premises where made by him, to be drunk there.

*Hockaday, Att'y Gen'l,* for Respondent.

I. It was not necessary to allege in the indictment that the defendant was not a "dram-shop keeper." The averment that he had no "wine and beer house license," was sufficient. (State vs. Cruise, 16 Mo. 391.)

II. The act of March 25th, 1872 (Wagn. Stat. §§ 28–33, inclusive of p. 554), did not repeal, invalidate, or in any manner affect section 25, p. 554, of the dram shop act. The two were intended and can be operated together. The former was simply intended to establish a different class of licenses, but not to authorize the manufacturer of wine to open a dram shop on his premises, by suffering it to be drunk at the place of sale, without first procuring a "wine license."

III. The amendment of the 25th section of the "dram shop act," in March, 1873, was equivalent to passing the law anew, and by its own provisions shows the legislative intent to include wine as fully as any other class of intoxicating liquors.

IV. The vendor of wines of his own growth and manufacture, must have a license, in order to enjoy the privilege to the full extent given by law to license "wine and beer house keepers."

The privilege to sell wine on the premises of the manufacturer does not carry with it the privilege to permit it to be drunk there-

State v. Jaeger.

on. If this were the case, the keepers of licensed wine and beer houses would not be protected. (State vs. Wyl, 55 Mo. 67.)

SHERWOOD, Judge, delivered the opinion of the court.

In this case the indictment was as follows :

" The grand jurors of the State-of Missouri impaneled and sworn, and charged to inquire within and for the body of the county of Newton upon their oaths present: that John Jaeger, on the 31st day of July, 1873, at the county of Newton, in the State of Missouri, being then and there a maker of intoxicating liquors, to-wit: fermented wine, did then and there sell to one Allen Williams a bottle of said intoxicating liquors, and did then and there unlawfully and willfully permit and suffer the said Allen Williams to drink the said intoxicating liquor at the place of sale, the same being a place under the control of him, the said John Jaeger, he, the said John Jaeger, not having then and there a wine and beer house license, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Missouri.

N. H. DALE,<br>Pros. Att'y," etc.

The defendant appeared and moved to quash this indictment for the following reasons :

1st. Because said indictment does not charge that any offense has been committed against the laws of the State of Missouri.

2d. Because said indictment does not allege that the defendant was not a dram-shop keeper, or that he had not lawful authority to sell intoxicating liquors, to be drank in the premises where the same were sold.

3d. Because said defendant, as a maker of fermented wine, had the right to sell said wine in any quantity, and for any purpose, at the place where the same was made.

This motion having been overruled by the court, the defendant pleaded " not guilty," and at the next term the case was tried by the court, without a jury, upon the following agreed statement of facts :

" In this case it is agreed that the defendant, jointly with his brother, Herman Jaeger, is a wine and grape grower in the county of Newton, in the State of Missouri; that said Jaeger, on the 13th day of July, 1873, and long before and ever since that time, jointly owned and lived upon and cultivated eighty acres of land in said Newton county; that upon said eighty acres of land there was at the time before mentioned a dwelling house, where defendant and his brother Herman resided, a wine cellar, wine manufactory and vineyard; that said Jaeger, at their said place of residence, had for some years before the 31st day of July, 1873, manufactured and produced wine from the grapes grown by them on said premises; that on or about said 31st day of July, 1873, defendant sold to one Allen Williams a bottle of said wine so grown and made by said Jaeger on said premises, where said wine was grown and made, which wine had been before that time fermented, and permitted said Allen Williams to drink a portion or the whole of said bottle of wine on said premises, where said wine was made and sold, said premises at the time being under the control of said defendant; that said defendant had at the time last mentioned no wine or beer house license."

At the close of the case defendant asked the court to grant three declarations of law, to the effect generally, that under the statute it was no offense for a wine-grower, who has sold on his own premises wine of his own production, to permit the same to be drank at the place of sale. All of these declarations were refused by the court, the defendant found guilty, and fined $40 and costs.

The only question needing solution is that presented by these declarations.

To attain, in this regard, a correct conclusion, necessitates an examination into the history of legislation in this State respecting production of wine.

The first act relating thereto was that approved March 26th, 1868, which so amended section 26, chapter 98 of the General Statutes, that it read as follows:

"This chapter shall not be so construed as to affect the right of a merchant to sell intoxicating liquors according to the provisions

of the law regulating the licensing and taxation of merchants, [nor as affecting the right of wine-growers to sell wine of their own production by the bottle of ordinary size.]" The amendment, thus made, I have placed within brackets.

This section underwent a further amendment, by the act approved February 25, 1869, and in lieu of the words, " by the bottle of ordinary size," were substituted, " in any quantity on their own premises."

The act last cited was followed by that approved March 25, 1872, entitled "An act to amend chapter 98 of the revised statutes of 1865, being chapter 48 of Wagner's Statutes, concerning dram-shop keepers and their licenses, and to promote temperance and encourage the production of native wines in this State."

It is only requisite to quote the first and second sections of this act :

Sec. 1. "There is hereby created a special class of licenses, to be known as wine and beer licenses. A wine and beer house keeper is a person permitted by law, being licensed as such, to sell beer, cider and native wines, the latter being the growth and manufacture of this State, in quantities not exceeding ten gallons."

Sec. 2. "No person not having a license as dram-shop keeper shall, directly or indirectly, sell beer, cider and native wines, the latter the growth and manufacture of this State, in less quantities than one gallon, without taking out a license as wine and beer house keeper ; *provided, however*, that this section shall not be construed as authorizing a license to be levied upon and collected from any wine-grower for selling wine of his own production, in any quantity, on his own premises."

The question as to what are to be regarded as such premises, has received judicial construction to the effect that they are where the wine is produced or manufactured. (State vs. Wyl, 55 Mo. 67.)

It will thus be observed that the act of 1868 creates and confers a new privilege on wine-growers, that of selling " wine of their own production by the bottle of ordinary size ;" that the act of 1869 enlarges the privileges conferred, by permitting them to

sell such wine " in any quantity on their own premises," and that the act of 1872, although giving origin to a " special class of licenses," in respect to the sale of beer, cider and native wine, still sedulously protects the wine-grower by the emphatic proviso, " that this section shall not be construed as authorizing a license to be levied upon, and collected from, any wine-grower for selling wine of his own prôduction, in any quantity, on his own premises."

Had the act of 1868 remained in full force, there would, perhaps, have been ground for the fair deduction that the legislature, by limiting the producer to sales of his wine " by the bottle of ordinary size," designed those words as a preventative of the assumption of any larger privileges than those specially conferred by that act. But the subsequent acts referred to, appear to abolish all restrictions relative to measurement, and to leave the matter of measurement, or whether the wine shall be measured at all or not, to the wine-grower's option, so long as he complies with the statutory conditions applicable to his case.

Now, it must not be assumed, that the legislature was not actuated by an intelligent motive, when making the change in the statute just cited ; and if that change is thus referable to legislative intelligence, it must mean something. What other meaning can be reasonably assigned it, but that of intended removal of previously existing restrictions ?

And if those restrictions are removed, what remains to prohibit the wine-grower from allowing wine, *when* sold, to be drunk *where* sold ?

That there is nothing to so prohibit him would seem obvious. By an examination of the acts already adverted to, and which have been incorporated into chapter forty-eight of Wagner's Statutes, it will be seen that they confer no express permission even on the holder of a wine and beer-house license to allow wine or beer to be drunk on the premises where sold, and it is only by resort to a process of reasonable inference that you arrive at the result that such permission was necessarily intended.

If, then, this result is reached from the premise of a particular license to sell " in quantities not exceeding ten gallons," why may

not a similar result be arrived at from a license coming in the shape of a broad legislative grant, to sell in any quantity whatsoever?

And the same argument which would hold the wine-grower indictable for allowing his products to be drunk where he sells them, would also render the wine and beer-house keeper liable to indictment; for the law which applies to him, when taken literally, barely allows him to sell " in quantities not exceeding ten gallons ;" "that and nothing more," and bestows no express permission to allow his beverages to be used where sold.

That the legislature intended to specially favor the wine-grower, cannot I think, if attention be given to the acts already adverted to, be seriously doubted.  But if the theory insisted on by the prosecution were to prevail, in what better plight would the wine-grower be than the ordinary distiller of whiskey?  Manifestly none ; for the latter can sell in any quantity not less than a quart, but is imperatively prohibited in the 25th section of the same chapter, from permitting his products " to be drunk at the place of sale."  And sections 26 and 29 of that chapter, while declaring that the chapter of which they form a part shall not be construed as affecting the right of the wine-grower to sell on his own premises, nor as authorizing a license to be collected from him, contains nothing even remotely indicative of such a restriction as section 25 imposes on the distiller.

Thus contrasted, the difference between the section relating to the distiller, and the section relating to the wine-grower, possesses very marked significance.  On the one hand restraining the distiller, on the other imposing no restraints whatever on the wine-grower, either as to the quantity sold or where drunk.

This being the case we cannot ignore the striking antithesis which these sections afford and press so strongly upon our attention, without ignoring also, two familiar canons of construction:

1st.  That if possible the intention of the legislature is to govern ;

2nd.  That penal statutes, such as the one before us, must be strictly construed.

In Howell vs. Stewart, (54 Mo. 400) we held in conformity to English decisions there noted, that where a statute defining an

offense, designated one class of persons as subject to its penalties, all other persons not mentioned, were to be deemed as exonerated. In the chapter being discussed, not only are there no penalties directed against the wine-grower who fails to take out a license, but, as before seen, he is most pointedly exempted from any necessity in this regard by the latter clause of section 26, and the special proviso in his behalf in section 29.

So that it will be perceived that the legislative inhibition respecting a sale without license, falls alone on, and is confined to, those upon whom the law imposes the duty of obtaining a license, i. e., the dramshop keeper and the wine and beer-house keeper.

But it is urged that the indictment is drawn under the provisions of the act approved March 13, 1873. It is enough to say, however, in this connection, that that act simply purports to be amendatory of section twenty-five already considered, and does not refer to nor profess to be amendatory of any other section of the chapter. Repeals by implication are never favored. (City of St. Louis vs. Independent Ins. Co., 47 Mo. 146, and cas. cit.; McVey vs. McVey, 51 Mo. 400; Potter's Dwarr. on Stat. and Const., pp. 154, 155, notes 4 and 5) and this is especially the case in relation to penal laws.

The foregoing reasons appear to us conclusive that the judgment should be reversed; and it is so ordered.

Judge Wagner absent; the other judges concur.