[No. 11471. *En Banc.* December 18, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. JACOB FURTH, *Appellant.*[1]

CRIMINAL LAW — PROSECUTION — ABATEMENT—DEATH. The death of a defendant in a criminal case, pending appeal, in the absence of a statute to the contrary, permanently abates the action and all proceedings under the judgment, even though the judgment was the imposition of a fine.

SAME—STATUTORY PROVISIONS. Such rule is not affected by Rem. & Bal. Code, §§ 2188, 2201, 2206, providing that judgments for fines in criminal actions may be made liens upon the real estate of the defendant, and that execution may issue against his property.

SAME—ABATEMENT—COSTS. Where a criminal action has been abated by the death of the accused, the case will not be retained to determine a question of costs.

SAME—ABATEMENT—DEATH OF ACCUSED. Rem. & Bal. Code, § 1743, relating to the substitution of parties upon a death pending appeal, does not apply to a criminal action abated by the death of the accused.

[1]Reported 144 Pac. 907.

BANKS AND BANKING—OFFENSES—RECEIVING DEPOSITS AFTER IN-
SOLVENCY—ACCESSORIES — STATUTORY PROVISIONS. The general aider
and abettor statute, Rem. & Bal. Code, § 2260, defining aiders and
abettors has no application to the offense of receiving deposits in a
bank knowing it to be insolvent; inasmuch as by Rem. & Bal. Code,
§ 2640, making it a felony if any "owner, officer, stockholder, agent,
or employee" of concerns engaged in the business of banking shall
accept or receive any deposit or "shall consent thereto or connive
thereat," knowing the concern to be unsafe or insolvent, the offense
is confined to a class within the bank, and the act has its own aider
and abettor clause, also confined to the same class, indicating an in-
tention not to include any one without the class who should aid or
abet the criminal act; hence an outsider having no connection with
the insolvent bank, cannot be prosecuted as aiding and abetting
some officer or employee of the bank in receiving deposits knowing
the bank to be insolvent.

STATUTES—CONSTRUCTION—CRIMINAL LAW. Reasonable doubt up-
on questions of law must be resolved in favor of the accused; and
a statute capable of two meanings will be construed in favor of in-
nocence.

Appeal from a judgment of the superior court for What-
com county, Hardin, J., entered April 28, 1913, upon a trial
and conviction of aiding and abetting the receiving of de-
posits in a bank knowing it to be insolvent. Reversed.

*Preston & Thorgrimson, Newman & Kindall,* and *Hughes,
McMicken, Dovell & Ramsey,* for appellant.

*Frank W. Bixby* and *J. L. Corrigan,* for respondent.

GOSE, J.—The defendant Furth was tried and sentenced
upon an information charging that one Schricker received
a deposit in a private bank in which he (Schricker) was one
of the owners, knowing that the bank and the individual
members thereof were unsafe and in an insolvent condition,
and that Furth and his codefendants, knowing the insolvent
condition of the bank and the individual members composing
it, aided, abetted, counseled, encouraged and induced Schricker
to accept and receive the deposit. A judgment was entered
upon the verdict imposing a fine of $10,000 and costs, and
directing that the defendant Furth "stand committed to the

custody of the sheriff until such fine and costs are paid, as provided by law."

The defendant Furth, who was tried separately, has appealed. While the appeal was pending, and awaiting decision before this court, the appellant died. His death has been suggested to this court. Counsel for the state and counsel for the sole executrix of the last will and testament of the deceased have requested the court to decide the case upon the merits.

The courts of the country, both state and Federal, have, with marked unanimity, held that the death of the defendant in a criminal case pending appeal, in the absence of a statute expressing the contrary, permanently abates the action and all proceedings under the judgment. They make no distinction between a sentence of imprisonment and the imposition of a fine. The underlying principle is that the object of all criminal punishment is to punish the one who committed the crime or offense, and not to punish those upon whom his estate is cast, by operation of law or otherwise. *Harrington v. State*, 53 Ga. 552; *United States v. Pomeroy*, 152 Fed. 279, which was reversed in *United States v. New York Cent. & H. R. R. Co.*, 164 Fed. 324, upon the sole ground that the trial court had lost jurisdiction. *United States v. Mitchell*, 163 Fed. 1014; *United States v. Dunne*, 173 Fed. 254; *O'Sullivan v. People*, 144 Ill. 604, 32 N. E. 192, 20 L. R. A. 143; *Boyd v. State*, 3 Okl. Cr. 684, 108 Pac. 431; *State v. Woods*, 56 Mo. App. 55; *Overland Cotton Mill Co. v. People*, 32 Colo. 263, 75 Pac. 924; *People v. St. Maurice*, 166 Cal. 201, 135 Pac. 952; *Town of Carrollton v. Rhomberg*, 78 Mo. 547; *March v. State*, 5 Tex. App. 450; *Burks v. State* (Tex. Cr.), 105 S. W. 496; *Mickle v. State*, 5 Okl. Cr. 707, 115 Pac. 628; *Williams v. State* (Okl. Cr.), 115 Pac. 379; *Harding v. State* (Tex. Cr.), 36 S. W. 82; *Pustiofsky v. State* (Tex. Cr.), 28 S. W. 947; *Hudson v. State* (Tex. Cr.), 70 S. W. 82; *List v. Pennsylvania*, 131 U. S. 396; *Menken v. Atlanta*, 131 U. S. 405; *People v. Pouchot*, 174 Ill. App. 1.

In the *Pomeroy* case, Pomeroy was indicted and convicted of the offense of giving rebates in violation of the Federal statute. He was sentenced to pay a fine of $6,000, and judgment against him for that amount was entered. He afterwards died. His executor moved for an order declaring that the judgment had abated. The district attorney argued that the proceedings, if any appeal was pending, would abate, leaving the judgment appealed from in full force. He further argued that the judgment established the liability as a debt. In addressing itself to these contentions, the court said:

"Upon the whole there is in my opinion no satisfactory authority controlling this case. It must therefore be decided on fundamental principles. In my opinion the fundamental principle applicable to this case is that the object of criminal punishment is to punish the criminal, and not to punish his family. When A. recovers a judgment against B. for a tort, the recovery is undoubtedly based on the defendant's misconduct; but the fundamental principle upon which the action is maintained is the idea of compensating the injured party; but, when a court imposes a fine for the commission of a crime, there is no idea of compensation involved. In this case the defendant was fined $6,000. That money was not awarded as compensation to the United States. No harm had been done to the United States. It was imposed as a punishment of the defendant for his offense. If, while he lived, it had been collected, he would have been punished by the deprivation of that amount from his estate; but, upon his death, there is no justice in punishing his family for his offense. It may be said, of course, that there is very little difference between the loss which his family would have sustained if the money had been collected before his death, and the loss which it will now sustain if it is collected from his estate. But if the money had been collected before his death, he would have been punished. If it is collected now, his family will be punished, and he will not be punished. In my opinion, therefore, this prosecution should be deemed ended and this judgment abated by the defendant's death." 152 Fed. 282.

In the *Mitchell* case, the defendant had been sentenced to a term of imprisonment and to pay a fine of a thousand dol-

lars for violation of a Federal statute. The cause was taken to the supreme court on a writ of error. While the writ was pending, the defendant died. Thereupon, upon the suggestion of counsel for the defendant, the court dismissed the writ without further hearing or proceedings. Subsequently, the government, through the district attorney, presented a claim to the administrator of the estate of the deceased for the amount of the fine, and the administrator thereupon appeared in the court of original jurisdiction, by motion, to have the entire proceeding against the deceased abated, and the fine canceled. In holding that the entire cause was abated, and that the fine imposed was not a subsisting claim or demand against the estate of the deceased, the court said:

"It is a thing self-evident, therefore, that the death of a person upon whom such a judgment is imposed would put an end to an infliction or enforcement of the punishment. A fine being a pecuniary punishment imposed upon the person, it would seem that a like result would follow. If the accused should die before the punishment was in reality enforced or inflicted, he could not be pecuniarily mulcted or punished in person after he had ceased to exist. In passing judgment, whether of imprisonment or fine, it is the purpose of the court and the law that the accused be personally punished for the amendment of his life and of his deportment in the future, and to deter others from committing like offenses. If it be a personal infliction at the time of passing judgment, when, after judgment, does it cease to be personal? Does it cease at the time of docketing, or at the time of the issuance and service of the execution, or of making the writ, or at any time? The answer is plainly that by no act in the enforcement of the judgment does it lose its original character as a personal infliction of punishment. If the fine is made out of his property, then as to that he is punished; but, if made out of the property that has descended to his heirs, or devised to his legatees, then it would seem he is not punished, for his day of temporal punishment has passed."

This case was affirmed on appeal in the case of *United States v. Dunne,* where the court said:

"Upon the face of the record, the action arises *ex delicto;* and all private criminal injuries or wrongs, as well as all public crimes, are buried with the offender."

In *O'Sullivan v. People,* after observing that the only right of review given to the representatives of a deceased person at common law in a criminal case was that of an attainder for treason or felony, the court said:

"A judgment can not be enforced when the only subject matter upon which it can operate has ceased to exist. When the defendant, ordered to be punished, is dead, the execution of that order is absolutely arrested;—for the future it is as entirely a nullity as any subsequent judgment arresting it can possibly make it to be."

In *Boyd v. State,* the defendant was convicted for a violation of the prohibition law, and sentenced to pay a fine of $200 and costs, and to be confined for thirty days in the county jail, from which judgment he appealed. While the case was pending upon appeal, he died. In holding that the proceedings abated, the court said:

"His death having been suggested, the proceedings abate, and no decision upon the merits of the appeal will be rendered. A civil action does not abate by the death of a party if the cause of action survive or continue, but in a criminal action the sole purpose of the proceedings is to enforce the criminal law and punish the person found guilty of a violation thereof. The personal representative of the deceased is not responsible for the alleged violation of the law by the defendant during his lifetime, and cannot be required to satisfy the judgment rendered against him. It is only the person adjudged guilty who can be punished, and a judgment cannot be enforced when the only subject matter upon which it can operate has ceased to exist."

In the *Pomeroy* case, reference was made to a Federal statute which provides:

"In all criminal or penal causes in which judgment or sentence has been or shall be rendered, imposing the payment of a fine or penalty, whether alone or with any other kind of punishment, the said judgment, so far as the fine or penalty

is concerned, may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced."

At the time the case of *People v. St. Maurice* was decided, the state of California had a statute identical in terms with our statute. Rem. & Bal. Code, §§ 2199, 2201 (P. C. 135 § 1245).

In *United States v. Pomeroy*, it was held that the Federal statute authorizing the issuance of an execution for the enforcement of a judgment for fines and penalties in criminal cases was merely a re-enactment of the common law.

A case will not be retained for the purpose of determining the question of costs in a criminal case, which is a mere incident to the judgment of conviction, where the action itself has abated. *State v. Martin*, 30 Ore. 108, 47 Pac. 196; *Gibson v. State*, 178 Ind. 315, 99 N. E. 424; *Stanisies v. State*, 90 Neb. 278, 133 N. W. 412. This is in harmony with the view adopted in this court in civil cases. *Vollman v. Industrial Workers of The World*, 79 Wash. 192, 140 Pac. 337.

Counsel for the state has called our attention to Rem. & Bal. Code, §§ 2188, 2201, and 2206 (P. C. 135 §§ 1231, 1249, 1259). The former provides that judgments for fines in all criminal actions may be made liens upon the real estate of the defendant in the same manner and with like effect as judgments in civil actions. Section 2201 provides that execution may be issued against the property of the defendant upon a judgment for fine and costs in the same manner as in civil actions. Section 2206 provides that an execution may issue at any time against the property of the defendant in criminal cases as in other cases. As we have said, the California statute and the Federal statute contained like provisions. Our attention has also been called to the provisions of Rem. & Bal. Code, § 1743 (P. C. 81 § 1239), but the words of that section—"As may be proper, as in case of death of a party pending in an action in the superior court"—make

it clear that the section has reference to civil actions. Other sections of the appeal statute which have been called to our attention afford no aid in the solution of the question. We think the action abated as to the appellant Furth upon his death. However, in view of the invitation of counsel to decide the case upon the merits, and because the case is pending in the trial court against other defendants, we have thought it best to pass upon the merits.

The charging part of the information is as follows:

"That W. E. Schricker being one of the owners of W. E. Schricker & Co., Private Bank, the said W. E. Schricker & Co., Private Bank, being a copartnership, firm and association consisting of W. E. Schricker and L. L. Andrews, copartners doing a general banking business, and of receiving money and negotiable paper and instruments on deposit at LaConner, Skagit county, Washington, under the firm name and style of 'W. E. Schricker & Co., Private Bank,' and the said W. E. Schricker knowing that for a long time prior to and on the 15th day of April, 1912, that the said W. E. Schricker & Co., Private Bank, and the said individual members thereof, were unsafe and in an insolvent condition, did on the said 15th day of April, 1912, in Skagit county, state of Washington, unlawfully accept of and receive from one Fred Kalso for deposit in said bank to the credit of one Otto Kalso, a certain negotiable instrument, to wit: a check issued and drawn by The W. W. Robinson Co., a corporation, upon the Scandinavian American Bank of Seattle, a corporation, for the sum of $2,569.34, and of the value of $2,569.34, payable to the order of said Otto Kalso and prior to such deposit having been indorsed so as to transfer title thereto to the said W. E. Schricker & Co., Private Bank; and that the said defendants Jacob Furth, E. W. Andrews, Daniel Kelleher and R. V. Ankeny, at all of said times knowing that the said W. E. Schricker & Co., Private Bank, were doing such a general banking business and of receiving money and negotiable paper and instruments on deposit, and that said partnership and the said individual members thereof, were unsafe and insolvent as aforesaid, did unlawfully and feloniously aid, abet, counsel, encourage and induce the said W. E. Schricker to accept and receive the deposit so made by the said Fred

Kalso, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state of Washington."

The appellant had no connection with Schricker's bank, either as owner, officer, agent or employee.

The information is predicated upon the provisions of the criminal code. Laws 1909, ch. 24, p. 890 *et seq.*, §§ 8 and 388; Rem. & Bal. Code, §§ 2640, 2260 (P. C. 135 §§ 773, 15). These sections are as follows:

"§ 2640. Every owner, officer, stockholder, agent or employee of any person, firm, corporation or association engaged, wholly or in part, in the business of banking or receiving money or negotiable paper or securities on deposit or in trust, who shall accept or receive, with or without interest, any deposit, or who shall consent thereto or connive thereat, when he knows or has good reason to believe that such person, firm, corporation or association is unsafe or insolvent, shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than ten thousand dollars."

"§ 2260. Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

At the close of the state's case, the appellant moved for a directed verdict upon several grounds, one of which was that the acts charged in the information do not constitute a crime. It is argued here that the court erred in denying the motion. It will be observed that Rem. & Bal. Code, § 2640, embraces only "every owner, officer, stockholder, agent or employee,"

of a person, firm, corporation or association engaged in the business of banking who shall accept or receive any deposit, etc., and the same class of persons "who shall consent thereto or connive thereat." In other words, the statute is restricted to the persons who have direct connection with the bank which receives the deposit. It reaches the person within the bank who accepts the deposit where he knows or had good reason to believe that the bank is unsafe or insolvent, and each of the class who, with like knowledge, shall "consent thereto or connive thereat." The word "connive" means to look upon with secret favor or to secretly cooperate. Webster's New International Dictionary. It implies both knowledge and assent, either active or passive.

The section first quoted embraces all that is contained in § 2260, but restricts the accessoryship to the owners, officers, stockholders, agents or employees of the insolvent bank. It is not a reasonable supposition that the legislature intended to reach accessories in the bank by § 2640, and accessories out of the bank by § 2260. It is merely a question of legislative intent. It would seem that had the legislature intended to reach *every person* who should aid or encourage the acceptance of any deposit by an insolvent bank, that it would have so provided in the section of the statute where it was dealing with that precise subject, or that it would have omitted every phase of the accessoryship and covered it by the section of the statute which treats of aiding and abetting. A reference to the criminal code will disclose that there are many sections which cover every phase of principalship and accessoryship, leaving no scope for the application of the provisions of § 2260. This was recognized in *State v. Wappenstein*, 67 Wash. 502, 121 Pac. 989, where we said:

"These sections [meaning §§ 2007 and 2260] are general in their terms, and are manifestly intended to meet cases not otherwise specifically provided for by statute. They have no application to acts which are, by specific and distinct statutes, expressly designated and made subject to punishment as primary crimes in themselves."

In *King v. Armstrong*, 9 Cal. App. 368, it was said:

"Where there are in an act specific provisions relating to a particular subject they must govern in respect to that subject, as against general provisions in other parts of the statute, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate."

The same thought was expressed in *State ex rel. Donnelley v. Hamilton*, 33 Nev. 418, 111 Pac. 1026, in the following language:

"Where there is in one act, or several contemporaneously passed, specific provisions relating to a particular subject, they will govern in respect to that subject as against general provisions contained in the same acts."

The interpretation which we have announced was recognized in *Ex Parte Rickey*, 31 Nev. 82, 100 Pac. 134, 135 Am. St. 651; *Brown v. State* (Tex. Cr.), 151 S. W. 561; *Field v. United States*, 137 Fed. 6; *United States v. Hartwell*, 6 Wall. 385; *Frey v. Commonwealth*, 83 Ky. 190; *Commonwealth v. Carter*, 94 Ky. 527, 23 S. W. 344; *Mitchell v. State*, 34 Tex. Cr. 311, 30 S. W. 810; *Strong v. State*, 52 Tex. Cr. 133, 105 S. W. 785; *Commonwealth v. Sinclair*, 195 Mass. 100, 80 N. E. 799; and *State v. Jaeger*, 63 Mo. 403.

In *Ex parte Rickey*, it was held that an indictment charging that the president of an incorporated bank received a deposit through the receiving teller knowing the bank to be insolvent, did not charge a crime under a statute making it a crime for "every officer, agent, teller or clerk of any bank" to receive a deposit knowing the bank to be insolvent. After stating the universal rule that penal laws are to be construed strictly, the court said:

"Finally it must be conceded that when the legislature saw fit to deal with the subject of insolvent banks, it had power to limit the extent of the penal provisions. It had power, if it saw fit, to impose a penalty only upon those who received deposits either in fact or in law. If this was the intention of the legislature, it would be difficult to find words more ex-

pressive of that intent than those used in the act in question. As the language used in the statute warrants the court only in determining such to be the intent of the legislature, we are bound to construe the statute accordingly. With the wisdom and policy of statutes courts have nothing to do; that function is exclusively the province of the legislature."

In *Brown v. State*, the indictment charged that the defendant "received and assented to the reception" of a deposit in a private bank, he being its president and knowing that it was insolvent. The statute made it penal for an "owner, agent, or manager" of any bank to "receive or assent to the reception" of any deposit knowing it to be insolvent. In holding that the indictment did not charge a crime, the court said:

"It will readily be perceived that a president of a private bank may not be one of the owners of the bank; he may not have a dollar's interest in the bank. The statute does not hold him responsible as president for receiving money on deposit, where the bank is insolvent or in failing circumstances. No such officer is mentioned in connection with private banks. In order to so hold him, it must allege and prove that he was either the owner, the agent, or the manager."

It is asserted by counsel for the appellant, and not denied by counsel for the respondent, that the states of Nevada and Texas each had an aider and abettor statute at the time these cases were heard.

In *Field v. United States*, the plaintiff, who was not and had not been a bankrupt, and who was a vice president of a corporation which was bankrupt, was convicted under a statute which reads:

"A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy."

It was contended that the indictment and conviction should be sustained under another section of the bankruptcy law, which reads:

" 'Persons' shall include corporations, except where otherwise specified, and officers, partnerships, and women, and when used with reference to the commission of acts which are herein forbidden shall include persons who are participants in the forbidden acts, and the agents, officers, and members of the board of directors or trustees, or other similar controlling bodies of corporations."

It was held that the latter clause did not enlarge the terms or broaden the interpretation of the former; that only those persons were punishable who are, or have been, bankrupts; and that the indictment did not charge a crime. A like principle was announced in *United States v. Hartwell.*

In *Frey v. Commonwealth*, the rule was announced thus:

"Where a statute creates a felony, and annexes a punishment common to all persons who may be guilty of the offense, those aiding or abetting in the perpetration of the crime are included in the statute, and may be indicted. This is the rule of the common law, and was recognized as the correct doctrine in the case referred to."

It was held that where the crime was limited to a class, only those falling within its terms were subject to prosecution. *Commonwealth v. Carter* is to the same effect.

In *Mitchell v. State*, it was held that under a statute making it an offense for the "owners, licensees and tenants" to keep a disorderly house, an employee who aided and abetted the owner in keeping such a house was not subject to punishment. *Strong v. State* voices a like rule.

In *Commonwealth v. Sinclair*, the court said:

"There can be no doubt of the correctness of the rule that, in statutory offenses, where the plain intent of the statute is to inflict punishment only on the person actually committing the offense, others can not be brought within its provisions as principals upon proof merely that they were aiders and abettors."

Citing the Kentucky cases to which we have referred.

In *State v. Jaeger*, 63 Mo. 403, it is said that:

"Where a statute defining an offense, designated one class of persons as subject to its penalties, all other persons not mentioned, were to be deemed as exonerated."

The respondent has cited *Bishop v. State*, 118 Ga. 799, 45 S. E. 614, *People v. McKane*, 143 N. Y. 455, 38 N. E. 950, and other cases. These cases hold, in opposition to the line of cases from which we have quoted, that, where the statute makes it a crime for one of a designated class to do certain things, one without the class who aids or abets one within the class to do one of the things made penal, is within the statute. No case has been cited, however, where the aider and abettor statute was applied where the statute which created the crime and provided its punishment penalized a class who aided or abetted the principal offender. We would feel inclined to follow the rule, announced in *Bishop v. State* and *People v. McKane*, if the statute which deals particularly with the subject of receiving deposits in an insolvent bank, and provides the punishment for an infraction of its provisions, did not reach those within the bank who connived with one of the same class who actually received the deposit. The abetting clause in the section would seem to indicate an intention not to include any one without the class who should aid or abet the criminal act.

It is a principle of law of universal application that reasonable doubt upon questions of law, as well as upon questions of fact, shall be resolved in favor of the accused. In referring to this principle in *State v. Anderson*, 61 Wash. 674, 112 Pac. 931, we said:

"The statute may be of doubtful meaning on the question here suggested, but if it be so, it is only another reason for giving it the more narrow construction. Laws are interpreted in favor of liberty, and if a statute is capable of two constructions, one of which makes a given act criminal and the other innocent, the statute will be given the construction which favors innocence."

The same view was expressed in the recent case of *State ex rel. Dorrien v. Hazeltine*, *ante* p. 81, 143 Pac. 436.

It follows from what has been said that the motion for a directed verdict should have been granted.

The judgment is reversed with instructions to dismiss the action.

CROW, C. J., PARKER, MOUNT, MAIN, and MORRIS, JJ., concur.

ELLIS, J., concurs in the result.

FULLERTON, J. (concurring)—I concur in the conclusion reached by the majority on the first ground stated in the opinion, namely, the action has abated by the death of the defendant. Having reached this conclusion, I cannot think the merits of the controversy before us, and I therefore express no opinion thereon.

CHADWICK, J. (concurring)—I think the action has abated and therefore concur in the result.