[No. 29363-7-III.   Division Three.   October 27, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER HARRISON DEVLIN, *Appellant*.

*David L. Donnan* and *Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Larry D. Steinmetz* and *Mark E. Lindsey, Deputies*, for respondent.

518

*Joanne I. Moore* and *Sean J. Flynn* on behalf of Office of Public Defense, amicus curiae.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*Suzanne L. Elliott* and *Travis Stearns* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 KULIK, C.J. — The question presented here is whether a substituted party for a deceased criminal defendant on appeal may proceed at public expense under the deceased's order of indigency. We conclude that the substituted party, Christopher Devlin's estate, must independently pursue an order of indigency under RAP 15.2(c).[1] Accordingly, we vacate the order of indigency granted to Mr. Devlin and remand to the superior court for consideration of the indigency of Christopher Devlin's estate. Under RAP 15.2(c), the substituted party must demonstrate that the issues on appeal have probable merit and that the party has a constitutional or statutory right to that review at public expense.

## FACTS

¶2 On September 16, 2010, Mr. Devlin was convicted by a jury of first degree murder with aggravating circumstances. He was sentenced to life without possibility of early release and ordered to pay $800 in legal financial obliga-

---

[1] RAP 15.2(c) reads, in part, "In cases not governed by subsection (b) of this rule, the trial court shall determine in written findings the indigency, if any, of the party seeking review."

tions. By separate order entered on January 20, 2011, the court imposed restitution of $7,097 for crime victim compensation. RCW 9.94A.753. Mr. Devlin's attorney filed a notice of appeal and an order of indigency on September 16, 2010. Four days later, Mr. Devlin died in his jail cell of a drug overdose.

¶3 On October 21, 2010, Leslee Devlin, Mr. Devlin's sister and a resident of New York, filed a notice of substitution of party with this court. The notice was treated as a motion. After the State filed an objection to the substitution of party, the commissioner stayed the substitution question pending the trial court's appointment of Ms. Devlin as the personal representative of the deceased.

¶4 On December 30, 2010, Ms. Devlin was appointed administrator of Mr. Devlin's estate. The appointment order states that "[s]ince the assets of the Decedent's estate are minimal and the only asset of the estate has secured indebtedness in excess of its market value, cash bond should be waived." Order Granting Letters of Administration and for Authority to Participate in the Criminal Appeal, *In re Estate of Devlin*, No. 10-4-01659-9, at 2 (Spokane County Super. Ct., Wash., Dec. 30, 2010).

¶5 In January 2011, the commissioner of this court ruled that Ms. Devlin could substitute for her deceased brother, but raised sua sponte the question "whether Ms. Devlin may proceed with this appeal at State expense under Christopher Devlin's Order of Indigency." Commissioner's Ruling, *State v. Devlin*, No. 29363-7-III, at 2 (Wash. Ct. App. Jan. 19, 2011). The parties were directed to brief this issue. Additionally, amicus briefs have been filed by the Washington State Office of Public Defense (OPD), Washington Association of Criminal Defense Lawyers (joined by Washington Defender Association), and Washington Association of Prosecuting Attorneys (WAPA).

## ANALYSIS

¶6 The issue before this court is one of first impression: whether a substituted party may proceed with a criminal appeal at public expense under the deceased appellant's order of indigency. Our analysis begins with a short history of the evolution of the Washington rule of abatement.

### *Abatement Ab Initio and the* Webb[2] *Rule*

¶7 Abatement ab initio was first adopted by the Washington Supreme Court over 90 years ago in *State v. Furth*, 82 Wash. 665, 667, 144 P. 907 (1914). *Furth* held that if a criminal defendant dies while the appeal is pending, the appeal is dismissed and the entire criminal conviction is abated. The *Furth* rule was based on the principle that criminal punishment is designed to punish the offender, not the defendant's heirs or beneficiaries. *State v. Webb*, 167 Wn.2d 470, 473, 219 P.3d 695 (2009). After the defendant dies, the innocent heirs are shielded from " 'financial obligations intended to punish their deceased ancestors.' " *Id.* (quoting *State v. Devin*, 158 Wn.2d 157, 162-63, 142 P.3d 599 (2006)). The rule of abatement ab initio established in *Furth* was followed in Washington for many years and is still the rule in the majority of state courts. *Id.*; *State v. Carlin*, 249 P.3d 752, 762 (Alaska 2011).

¶8 In 2006, the Supreme Court in *Devin* overruled *Furth* to the extent that the older case automatically abated convictions and victim compensation orders when a defendant died during a pending appeal. *Devin*, 158 Wn.2d at 171-72. The appeal in *Devin* was dismissed because the defendant untimely filed it before he died. But the Supreme Court additionally ruled that *Furth* conflicted with modern laws that compensate crime victims because abatement ab initio may deprive victims of restitution. *Id.* at 167-68, 171.

---

[2] *State v. Webb*, 167 Wn.2d 470, 473, 219 P.3d 695 (2009).

Although *Devin* abolished the automatic rule of abatement, it did not prohibit abatement of legal financial obligations and left open the option of an appeal on the merits:

> [W]e do not preclude courts from abating financial penalties still owed to the county or State, as opposed to restitution owed to victims, where the death of a defendant pending an appeal creates a risk of unfairly burdening the defendant's heirs. We also do not preclude courts from deciding a criminal appeal on the merits after the appellant has died, if doing so is warranted.

*Id.* at 172.

¶9 The Washington Supreme Court again addressed the abatement rule in *State v. Webb*, 167 Wn.2d 470, 472, 219 P.3d 695 (2009). In *Webb*, the defendant timely appealed a conviction of presenting a fraudulent insurance claim and obtained an order of indigency. He was murdered while his appeal was pending. Mr. Webb's appointed counsel then moved the appellate court to abate the conviction and all legal financial obligations; no order of restitution was ever filed. Relying on *Devin*, the Court of Appeals dismissed the appeal and declined to abate the conviction or the financial obligations. *Id.*

¶10 On review, the Washington Supreme Court held that a deceased defendant's right to appeal does not mandate abatement of the conviction and monetary obligations.[3] *Id.* at 475. Then *Webb* explained how, following *Devin*, "an heir may establish that financial obligations other than restitution are unfairly burdensome and under what circumstances an appeal on the merits is warranted." *Id.* at 476. The court held that substitution of parties on appeal under RAP 3.2 was the appropriate avenue for heirs to challenge the deceased's financial obligations and to pursue the appeal on its merits. *Webb*, 167 Wn.2d at 472, 477.

---

[3] The State and WAPA argue that Mr. Devlin's death extinguished his constitutional right of appeal or that, at any rate, his suicide manifested his intent to abandon his appeal. These contentions are at odds with the decision in *Webb*, which recognizes both an heir's right to protect the estate as well as a victim's right to restitution. Neither of these rights should be affected by the method of the criminal appellant's death.

¶11 Specifically, *Webb* addressed three scenarios for pursuing appeals after the appellant's death. First, substitution allows the deceased defendant's heirs to argue that the financial obligations under the judgment, other than restitution, impose an unfair burden. *Id.* at 477. Second, substitution may be used to successfully challenge the conviction on the merits. Under this scenario, remand for retrial is impossible, but the conviction and all associated financial obligations, including restitution, are abated. *Id.* at 478. Third, "the substituted party may be successful in establishing that some or all financial obligations, including restitution, were incorrectly imposed or improperly calculated (as a matter separate from whether the financial obligation would impose an unfair burden on the heirs)." *Id.* If no one substitutes for the deceased appellant, the conviction and all financial obligations will stand. *Id.* at 478 n.1.

¶12 *Webb* was remanded to the Court of Appeals to allow a motion to substitute. *Id.* at 479. A motion to substitute was granted by the Court of Appeals and a due date for the appellant's opening brief was set. Shortly thereafter, however, a joint motion to dismiss the appeal was filed and the appeal was dismissed without further action by the court. Although the substituted party continued to be represented by appointed counsel up to dismissal, it is unknown whether representation would have continued at public expense.

### *The Order of Indigency*

¶13 Mr. Devlin's appointed counsel contends Ms. Devlin, as the personal representative of Mr. Devlin's estate, has stepped into the shoes of Mr. Devlin and, therefore, is entitled to appointed counsel under Mr. Devlin's order of indigency. He notes that because Mr. Devlin was found to be indigent, his estate is by definition indigent as well. *See* RAP 15.2(f) (continued indigency is presumed unless the trial court finds that the party is no longer indigent).

¶14 The petitioner carries the burden of proving qualification for an order of indigency. *State v. Clark*, 88 Wn.2d 533, 534, 563 P.2d 1253 (1977) (citing RAP 15.2(a)). "Indigence is a relative term, and must be considered and measured in each case by reference to the need or service to be met or furnished." *State v. Rutherford*, 63 Wn.2d 949, 953, 389 P.2d 895 (1964). "[I]t connotes a state of impoverishment or lack of resources on the part of a defendant which, when realistically viewed in the light of everyday practicalities, substantially and effectually impairs or prevents his procurement of . . . a complete appellate review of his claims of error." *Id.*

¶15 RAP 15.2(b)(1) provides that the trial court shall grant an order of indigency to a "party" who "is unable by reason of poverty to pay for all or some of the expenses for appellate review of: (a) criminal prosecutions . . . meeting the requirements of RCW 10.73.150." RCW 10.73.150 states that "[c]ounsel shall be provided at state expense to an adult *offender* . . . convicted of an offense when the offender is indigent." (Emphasis added.) Here, Mr. Devlin was found to be indigent and an order of indigency was entered. He had a constitutional and statutory right as an indigent *offender* to counsel at public expense. *Burgett v. Texas*, 389 U.S. 109, 114, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967); *State v. Winston*, 105 Wn. App. 318, 321-22, 19 P.3d 495 (2001); RCW 10.73.150. Under *Webb*, Mr. Devlin also had a constitutional right to appeal that survived his death as long as someone acted as a substituted party. *Webb*, 167 Wn.2d at 478. The question, then, is whether his order of indigency is individualized and applicable only to him as the "offender" under RCW 10.73.150, or whether the order of indigency is transferable to his estate as the substituted party on appeal.

### Law from Other Jurisdictions

¶16 The Supreme Courts in two other jurisdictions, Alaska and Maryland, have tangentially touched on the issue presented here. Both of those courts discussed at

length the abatement rule and whether it would be followed in their states.

¶17 The Alaska court in *Carlin* held that a public defender is "authorized to continue representing a deceased defendant after the personal representative of the defendant's estate chooses to continue the appeal." *Carlin*, 249 P.3d at 765. Alaska's Public Defender Act states that " '[a]n indigent *person* who is under formal charge of having committed a serious crime and the crime has been the subject of an initial appearance or subsequent proceeding, or is being detained under a conviction of a serious crime' is entitled to 'be represented.' " *Id.* (alterations in original) (quoting ALASKA STAT. § 18.85.100(a)). Because *Carlin* concluded that the purpose of the act was "to provide representation comparable to representation by private attorneys," it held that the act allowed "continued representation on appeal after the death of the defendant where the defendant's estate chooses to proceed with the appeal." *Id.* at 766.

¶18 In *Surland v. State*, 392 Md. 17, 36-37, 895 A.2d 1034 (2006), the Maryland Court of Appeals stated that a public defender may continue the prosecution of a deceased defendant's appeal. The court reasoned that "[b]ecause counsel, whether private counsel or the Public Defender, is usually already in the case and, but for the appellant's death, would be obliged to see it through, [there is] no reason why, unless a substituted party obtains other counsel, counsel already of record should not continue to prosecute the appeal, as they were employed or appointed to do." *Id.* at 37.

¶19 Neither *Carlin* nor *Surland* discuss the economic issues or impact of allowing the appeals to proceed with counsel provided at public expense. Also, in contrast with the Alaska statute that provides counsel to an "indigent person" charged with a serious crime, the Washington statute provides counsel at public expense to "an adult offender" who is determined to be indigent. RCW 10.73.150. Although a substituted party in a deceased defendant's

appeal may constitute a "person," that substituted party is not actually an "offender."

*Public Policy Considerations*

¶20 Washington has traditionally taken a conservative stance with regard to indigency and the expenditure of public funds. For instance, even though indigent defendants have a constitutional right to counsel at all critical stages of criminal proceedings, including appeals as a matter of right, public funds will not be expended to bring motions for discretionary review. *See* RAP 15.2(b)(1); *City of Richland v. Kiehl*, 87 Wn. App. 418, 421, 942 P.2d 988 (1997); *State v. Mills*, 85 Wn. App. 285, 288, 932 P.2d 192 (1997). Additionally, a petitioner is not entitled to appointed counsel in postconviction review under CrR 7.8 and by personal restraint petition unless the court determines that the petition is not frivolous. *State v. Robinson*, 153 Wn.2d 689, 694-95, 107 P.3d 90 (2005).

¶21 Funding for public defense is not limitless. In OPD's 2010 status report, it noted that "[w]ith a deepening recession in Washington State in 2010 and government revenues declining sharply, budgets at all levels—state, county, city—imposed unprecedented cuts in core services, including public defense." WASH. STATE OFFICE OF PUB. DEF., 2010 STATUS REPORT ON PUBLIC DEFENSE IN WASHINGTON STATE 2 (Jan. 2011), *available at* http://www.opd.wa.gov/Reports/TrialLevelServices/2010_PublicDefenseStatusReport.pdf. OPD "absorbed a 7.6 percent cut in addition to significant cuts previously enacted by the 2010 Legislature." *Id.* Public defense agencies in counties throughout the state have had to make budget adjustments to accommodate the declining revenue. *Id.* "[A]ny reduction in public defense funding arguably is a step in the wrong direction for constitutionally required services that have been systematically underfunded for decades." *Id.* at 3. Thus, public policy warrants careful weighing of the rights protected and the potential for prejudice against the costs of public funding when a criminal appeal continues beyond the death of the offender.

### Conclusions

█ █ ¶22 Ms. Devlin and OPD contend the personal representative of the estate stands in the shoes of the deceased and is therefore entitled to an order of indigency under RAP 15.2(b)(1)(a) because this is an appellate review of a criminal prosecution. *See In re Estate of Hatfield*, 46 Wn. App. 247, 251, 730 P.2d 696 (1986). The problem with this result is that the estate cannot actually stand in Mr. Devlin's shoes in the appeal of the criminal conviction. As Justice Sanders stated in his dissent to *Webb*, "the substituted heir would not be subject to the same criminal penalties of the deceased defendant, and therefore, it is a stretch to say that 'the interest of a party in the subject matter of the review has been transferred.'" *Webb*, 167 Wn.2d at 479 (Sanders, J., dissenting) (quoting RAP 3.2(a)). Even the majority opinion in *Webb* recognizes that remand for retrial is impossible with a substituted party. *Id*. at 478. Moreover, appointed counsel is mandated by statute solely for indigent *offenders* convicted of crimes. RCW 10.73.150. The estate, while representing Mr. Devlin's interests, is not actually an offender and cannot serve a sentence for Mr. Devlin's crimes.

¶23 In recognition that pursuit of a criminal appeal by a substituted party limits the relief available as well as the jeopardy to the appellant's estate, we conclude as follows:

¶24 I. <u>The estate, while entitled to counsel on appeal, is not entitled to counsel at public expense.</u> Generally, a criminal defendant's Sixth Amendment right to appointed counsel extends to felony and misdemeanor prosecutions whenever the defendant faces the risk of a loss of liberty. *State v. A.N.J.*, 168 Wn.2d 91, 97, 225 P.3d 956 (2010); *In re Disciplinary Proceeding Against Michels*, 150 Wn.2d 159, 168, 75 P.3d 950 (2003). In *State v. Long*, 104 Wn.2d 285, 705 P.2d 245 (1985), the Washington Supreme Court considered whether a defendant charged with negligent driving—a misdemeanor with no possibility of incarceration—

had a right to court-appointed counsel. The court distinguished between the constitutional right to counsel and the right to counsel at public expense. Quoting *Hendrix v. City of Seattle, Long* explained that the right to counsel is not the same as the right to *free* counsel:

> "The right to have counsel apparently is not in constitutional law the exact equivalent of the right to free counsel. One can scarcely imagine a situation under our constitutions where an individual does not have the right to employ and consult with an attorney, but this manifest right does not signify that the people are constitutionally obliged to furnish counsel to him at public expense in the less serious offenses."

*Id.* at 288 (quoting *Hendrix v. City of Seattle*, 76 Wn.2d 142, 150-51, 456 P.2d 696 (1969), *overruled by McInturf v. Horton*, 85 Wn.2d 704, 538 P.2d 499 (1975)).

¶25 " 'A criminal defendant's Sixth Amendment right to counsel attaches when a critical stage in a criminal prosecution resulting in loss of liberty is reached.' " *Id.* (quoting *State v. Fitzsimmons*, 93 Wn.2d 436, 442, 610 P.2d 893 (1980), *overruled by City of Spokane v. Kruger*, 116 Wn.2d 135, 803 P.2d 305 (1991)); *see also United States v. Unimex, Inc.*, 991 F.2d 546, 549-50 (9th Cir. 1993) (although a corporation has a Sixth Amendment right to representation by counsel, it has no constitutional right to *appointed* counsel because it cannot be imprisoned). Mr. Devlin's estate is not at risk of a loss of liberty. Thus, at this point in the criminal proceedings, Mr. Devlin's appeal is not at a "critical stage" justifying a constitutional right to counsel at public expense. Moreover, although the estate represents Mr. Devlin's interests, the estate is not the "offender" entitled to court-appointed counsel under RCW 10.73.150. Accordingly, Ms. Devlin, as representative of the estate of Mr. Devlin on appeal, is not entitled by constitution or statute to court-appointed counsel under Mr. Devlin's original order of indigency.

¶26 II. <u>The substituted party is treated as a quasi-civil appellant.</u> Ms. Devlin's remedy is to petition for an order of

indigency for the estate. But because the estate is not subject to the same criminal penalties as Mr. Devlin, it occupies a unique position on appeal. The only interests remaining are financial. Even review of the conviction on its merits can accomplish, at most, abatement of the conviction and its financial obligations. *Webb*, 167 Wn.2d at 478. When the interest at stake is only financial, the right to legal representation is not " 'fundamental' in a constitutional sense." *In re Dependency of Grove*, 127 Wn.2d 221, 238, 897 P.2d 1252 (1995) (considering the right to counsel of indigent civil litigants). Thus, public funding of appellate review involving merely financial obligations is not mandated to protect a fundamental liberty interest. *Id*. at 237; *see also A.N.J.*, 168 Wn.2d at 97; *Michels*, 150 Wn.2d at 168.

¶27 In effect, the estate survives as a quasi-civil appellant that seeks to protect the assets of Mr. Devlin from the financial obligations imposed by his criminal conviction. As such, the estate may move for an order of indigency under RAP 15.2(c). This subsection, which applies to all cases that are not governed by RAP 15.2(b), authorizes an order of indigency when the moving party demonstrates "that the issues the party wants reviewed have probable merit and that the party has a constitutional or statutory right to review partially or wholly at public expense." RAP 15.2(c). If the superior court finds that the party seeking review is unable to pay for all or some of the expenses for appellate review, those findings are forwarded to the Supreme Court to determine whether the superior court should enter an order of indigency. RAP 15.2(c)(2), (d). And if the Supreme Court determines that the party is seeking review in good faith, has an issue of probable merit, and is entitled to review partially or wholly at public expense, the Supreme Court will order the superior court to enter an order of indigency. RAP 15.2(d).

¶28 Accordingly, we vacate Mr. Devlin's original order of indigency and remand the matter to the superior court for consideration of the estate's indigency under RAP 15.2(c).

SIDDOWAY, J., concurs.

¶29 SWEENEY, J. (concurring) — I concur in both the majority's analysis and disposition here. I write separately to say, respectfully say, that I think our Supreme Court's opinion in *State v. Furth* sets out the preferable rule. *State v. Furth*, 82 Wash. 665, 144 P. 907 (1914), *overruled by State v. Devin*, 158 Wn.2d 157, 142 P.3d 599 (2006). Christopher Devlin is dead. The "defendant" does not exist. He no longer walks this earth. Moreover, his estate has no assets. Indeed, there is no showing that any claim has even been made against his estate. So there is no way for the State to relieve him of any punishment or, for that matter, to punish him further.

Reconsideration denied November 30, 2011.

Review denied at 174 Wn.2d 1008 (2012).