[No. J.D. 6.   En Banc.   November 27, 1991.]

*In the Matter of the Disciplinary Proceeding Against*
JANICE NIEMI, *Judge Pro Tempore of the*
*Superior Court for King County.*

*Janice Niemi*, pro se, and *Philip A. Talmadge*, for appellant.

*David D. Hoff, Scott Schrum*, and *Riddell, Williams, Bullitt & Walkinshaw*, for Commission on Judicial Conduct.

*Lee Kraft*, amicus curiae for appellant.

DOLLIVER, J. — Janice Niemi is a member of the Washington State Bar Association and a state senator elected from the 43rd Legislative District. As a state senator, Niemi serves on the Senate Law and Justice and Ways and Means Committees. Between January 3 and October

26, 1990, Niemi served on a case-by-case basis as a judge pro tempore for the King County Superior Court. During that time she presided over 32 cases on a total of 92 days.

On August 13, 1990, the Commission on Judicial Conduct informed Niemi a verified statement had been filed and proceedings were being initiated, pursuant to WAC 292-12-010(4), to determine whether her service as a judge pro tempore, while holding the status as a state senator, violated the Code of Judicial Conduct (Code). On September 13, 1990, the Commission filed a statement of charges which alleged probable cause existed that Niemi violated Canons 1, 2(A), and 7(A)(3) of the Code. On October 23, 1990, the Commission filed an amended statement of charges which alleged that Niemi also violated Canons 7(A)(1) and 7(A)(4). Niemi denied any violations and a fact-finding hearing was held on November 2, 1990.

On January 4, 1991, the Commission ruled Niemi's dual service as a judge pro tempore and a state senator violated Canons 1, 2(A), 7(A)(1), 7(A)(3), and 7(A)(4) of the Code. The Commission also found the doctrine of separation of powers "is improperly eroded . . . [when a] judge pro tempore, who is also a member of the legislative branch of government, must appear before the Commission to receive a reprimand or censure."

A majority (6 of 10) of the Commission censured Niemi and ordered that she discontinue her service as a judge pro tempore. The majority recommendation was based, in part, on Niemi's decision to continue to sit as a judge pro tempore in King County Superior Court following the issuance of Ethics Advisory Committee Opinion 86-10 which concluded that it was "not proper for a member of the Washington State Legislature to sit as a pro tempore judge" under the Code. The remaining Commission members recommended Niemi be reprimanded.

The filing of the Commission's decision was stayed until February 15, 1991, in order to allow Niemi to resolve pending cases. On March 1, 1991, Niemi filed a notice of contest

challenging the censure and the order disallowing her service as a judge pro tempore.

Niemi contests the Commission's decision in the following respects: that her dual service undermines the public's confidence in the integrity, impartiality and independence of the judiciary in violation of Canons 1 and 2(A); that Canon 7 applies to judges pro tempore and does not add a substantive requirement to the four conditions of service set forth in article 4, section 7 of the Washington State Constitution; that the doctrine of separation of powers is violated by her dual service; and that her dual service was more than a minor violation of the Canons based upon her continued service as a judge pro tempore in superior court following issuance of Ethics Advisory Opinion 86-10.

Niemi further contests the Commission's inclusion of Ethics Advisory Opinion 86-10 as a finding of fact; the Commission's failure to include the advisory opinion of the Assistant Attorney General, dated December 19, 1988, which concluded that dual service as a state legislator and a judge pro tempore did not violate the separation of powers; and the Commission's conclusion that the Model Code of Judicial Conduct (1990) is irrelevant to the proceedings.

Pursuant to Const. art. 4, § 31, RCW 2.64.010, WAC 292-12-150(1) and (3), and DRJ 2(a), the chairperson of the Commission certified the record of the proceedings to this court on March 19, 1991.

We reverse. We hold Janice Niemi's service as a judge pro tempore, while holding the status of a state senator, does not violate Canons 1, 2(A), 7(A)(1), 7(A)(3), 7(A)(4), or the separation of powers doctrine.

Canon 1 provides:

> An independent and honorable judiciary is indispensable to justice in our society. Judges should participate in establishing, maintaining, and enforcing, and should themselves observe high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this code should be construed and applied to further that objective.

Canon 2(A) provides:

> Judges should respect and comply with the law and should conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Niemi asserts Canons 1 and 2(A) apply only to a judge's performance of judicial duties and, therefore, because the Commission presented no evidence of any misconduct by Niemi in the performance of her duties as a judge pro tempore, no violation occurred.

The Commission contends Canons 1 and 2(A) apply to nonjudicial conduct and are violated by Niemi's dual service because it creates an appearance of impropriety.

■ The broad language of Canons 1 and 2(A) indicates they apply both to judicial and nonjudicial conduct of judges. The text of Canon 2(A) expressly states it applies "at all times". Moreover, the Code is explicit when it seeks to limit its application to judicial conduct. *See* Canon 3.

While Canons 1 and 2(A) have been applied to conduct of judges in the performance of their judicial duties, *see In re Deming*, 108 Wn.2d 82, 736 P.2d 639 (1987) (sexual harassment of court employees); *In re Buchanan*, 100 Wn.2d 396, 669 P.2d 1248 (1983) (dealings with staff, lawyers, and court employees violated Canons), they have also been applied in a nonjudicial context. *See In re Kaiser*, 111 Wn.2d 275, 281-83, 759 P.2d 392 (1988) (statements made by a judge during a reelection campaign).

Commentators agree Canons 1 and 2 govern nonjudicial conduct. *See* J. Shaman, S. Lubet & J. Alfini, *Judicial Conduct and Ethics* § 10.02 (1990); M. Comisky & P. Patterson, *The Judiciary — Selection, Compensation, Ethics, and Discipline* 173 (1987); S. Lubet, *Beyond Reproach: Ethical Restrictions on the Extrajudicial Activities of State and Federal Judges* 3-5 (1984). There are strong policy rationales for regulating nonjudicial conduct: (1) the avoidance of the appearance of partiality and favoritism; (2) the need to maintain the public confidence in the judiciary; and

(3) the need to ensure that judges will not be distracted by nonjudicial activities. *See* J. Shaman, S. Lubet & J. Alfini § 10.02 at 274; S. Lubet, at 5.

We agree Canons 1 and 2(A) are applicable to a judge's nonjudicial activity. However, we find Niemi's dual status does not offend the standard of behavior set forth in Canons 1 and 2(A).

■ In the past, this court has found violations of Canons 1 and 2(A) based upon direct evidence of misconduct. *Kaiser,* 111 Wn.2d at 282; *Deming,* 108 Wn.2d at 117; *Buchanan,* 100 Wn.2d at 397-98. In this case, the Commission presents no direct evidence of misconduct. Rather, the Commission simply asserts Niemi's dual service undermines the public's confidence in the integrity, independence, and impartiality of the judiciary. The Commission cites *Mistretta v. United States,* 488 U.S. 361, 407, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989) and *In re Walker,* 153 Ariz. 307, 736 P.2d 790 (1987) to support its position.

In *Mistretta,* it was claimed the participation of federal judges on the United States Sentencing Commission threatened the integrity of the judicial branch by diminishing its independence and creating the appearance of partiality. *Mistretta,* 488 U.S. at 405-08. While the primary issue in *Mistretta* concerned separation of powers, the Court also noted the issue implicated the Code of Conduct for United States Judges which prohibits participation in government if it would "undermine the public confidence in the integrity, impartiality, or independence of the judiciary". *Mistretta,* 488 U.S. at 404 n.27 (quoting Admin. Office of U.S. Courts, *Code of Judicial Conduct for United States Judges* (1987)).

The court rejected the argument that judicial participation hindered the independence of the judiciary.

[W]e cannot see how the service of federal judges on the Commission will have a constitutionally significant practical effect on the operation of the Judicial Branch. We see no reason why service on the Commission should result in widespread judicial recusals. That federal judges participate in the promulgation of guidelines does not affect their or other judges' ability impartially to adjudicate sentencing issues. While in the

> abstract a proliferation of commissions with congressionally mandated judiciary participation might threaten judicial independence by exhausting the resources of the Judicial Branch, that danger is far too remote for consideration here.

(Citation omitted.) *Mistretta*, 488 U.S. at 406-07.

Likewise in this case, regardless of the number of cases over which Niemi has presided or her number of days in court, we do not see how her dual status undermines the independence of the judiciary. Her status as a senator will not result in widespread recusals by other judges. Even with Niemi's participation on the Senate Law and Justice and Ways and Means Committees, there will, at most, be only a handful of cases which call for Niemi's recusal. There is also no indication that Niemi's participation on these committees or her status as a senator will affect her or other judges' ability impartially to adjudicate issues. Finally, Niemi's service as a senator does not threaten to exhaust judicial resources. Niemi is a part-time legislator and serves as a judge pro tempore on a case-by-case basis. Such service increases, rather than diminishes, the judiciary's resources.

The *Mistretta* Court was more troubled with whether federal judge participation on the Commission undermined public confidence in the impartiality of the judicial branch. *Mistretta*, 488 U.S. at 407. The Court concluded, however, that the appearance of partiality was neutralized because the Commission's purpose of developing rules to limit the discretion of sentencing judges was one in which judicial participation was "peculiarly appropriate." *Mistretta*, 488 U.S. at 407.

■ In this case, while Niemi will hear a broad range of issues in her role as a state senator, there is one factor, not present in *Mistretta*, *Walker*, or in any other case, which neutralizes the appearance of partiality — the constitutional requirement of consent of the parties or their attorneys. *See* Const. art. 4, § 7 ("A case in the superior court may be tried by a judge, pro tempore, . . . *agreed upon* . . . by the parties litigant, or their attorneys of record . . . .". (Italics ours.)).

Public confidence is undermined when the "citizenry conclude[s], even erroneously, that cases [are] decided on the basis of favoritism or prejudice rather than according to law and fact". J. Shaman, S. Lubet & J. Alfini § 10.03, at 275. Because the concern is the appearance of partiality, this concern is not overcome by recusal. J. Shaman, S. Lubet & J. Alfini, *supra*. Recusal is generally an insufficient safeguard because when litigants walk into a courtroom and perceive their case is prejudged or there is a bias against them, regardless of whether this is an accurate perception, their confidence in obtaining an impartial ruling is undermined. However, when these same litigants have the unfettered right to object to the judge hearing their case, the appearance of partiality is neutralized. If the litigants feel there is bias, they can object to the judge pro tempore and that person may not serve.

■ One could argue there is an appearance of partiality if nonlitigants are unaware parties must consent to a judge pro tempore sitting on their case. However,

> [t]he goal of a system of judicial restrictions should be to draw the line between those nonjudicial activities that enrich, or at least are harmless to, the judiciary and those that actually detract from or interfere with the business of judging. This line should not be drawn so as to eliminate all perceivable evils and temptations. Rather, the delineation should give the members of the judiciary every reasonable degree of latitude, barring activities only where they do measurable damage to the court's dignity, available time and energy, or appearance of impartiality.

(Footnote omitted.) J. Shaman, S. Lubet & J. Alfini § 10.07, at 279. Here, Niemi's status as a state senator does not measurably damage the judiciary's appearance of impartiality because the parties must consent to Niemi's service as a judge pro tempore. Furthermore, there is no testimony or evidence which would add any credence to the concerns expressed by the Commission.

The Commission next asserts Niemi's dual status as a state senator and a judge pro tempore violates Canons 7(A)(1), (3), and (4).

Canons 7(A)(1), (3), and (4) provide:

(1) Judges or candidates for election to judicial office should not:
(a) act as leaders or hold any office in a political organization . . .

. . . .
(3) Judges shall resign their office when they become candidates either in a party primary or in a general election for a nonjudicial office, except that they may continue to hold their judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention, if they are otherwise permitted by law to do so.
(4) Judges should not engage in any other political activity except on behalf of measures to improve the law, the legal system, or the administration of justice.

■ Niemi contends Canon 7 should not be construed to apply to judges pro tempore because to do so would add another substantive requirement to those set forth in article 4, section 7 of the Washington Constitution:

A case in the superior court may be tried by a judge, pro tempore, who must be a member of the bar, agreed upon in writing by the parties litigant, or their attorneys of record, approved by the court and sworn to try the case. . . .

We do not construe Canon 7 as providing a constitutional precondition to appointment as a judge pro tempore, but rather as a code of conduct which applies once a person is so appointed. *See Alex v. County of Los Angeles*, 35 Cal. App. 3d 994, 1006-08, 111 Cal. Rptr. 285 (1973).

In *Alex*, a California municipal court judge argued that a section of the California Constitution was unconstitutional because it added an additional eligibility requirement, a leave of absence from the bench without pay, to the requirements for congressional office set forth in the federal constitution. *Alex*, 35 Cal. App. 3d at 1007. The court held the state constitutional provision did not add a fourth eligibility requirement.

[S]ection 17 does not single out *federal* public office but applies across the board to *any* nonjudicial "public office" and does not, in fact, impose additional or different eligibility requirements for a federal elective office. What it does is spell out

certain conditions and limitations, as mandated by the citizens of California, which must be complied with in order to continue serving as a municipal or superior court judge in the State of California.

*Alex*, 35 Cal. App. 3d at 1007. Similarly in this case, Canon 7 does not single out judges pro tempore, but applies across the board to all judges or candidates and must be complied with in order to continue serving as a judge in the state of Washington. The Code does not exempt judges pro tempore from compliance with Canon 7. *See* CJC Preamble.

█ In applying Canon 7(A) to judges pro tempore, however, this court, especially in the area of ethical behavior, must forbid only conduct which violates the evils sought to be prevented. *See* Kaufman, *Lions or Jackals: The Function of a Code of Judicial Ethics*, 35 Law & Contemp. Probs. 3, 7 (1970) (rules should not be applied in a "broadside and indiscriminate manner"). Canon 7(A) has been so interpreted in the past. *See In re Staples*, 105 Wn.2d 905, 909-11, 719 P.2d 558 (1986).

In *Staples*, we stated the prohibition against political activity in Canon 7(A) serves to prevent three undesired results:

> (1) participation in outside activities so extensive that the time and energy available for the primary obligation are measurably impaired; (2) participation in out-of-court activities that may lead to actual bias or the appearance of prejudgment of issues likely to come before the court; and (3) actions that impair the dignity and esteem in which the court should be held.

*Staples*, 105 Wn.2d at 910 (quoting McKay, *The Judiciary and Nonjudicial Activities*, 35 Law & Contemp. Probs. 9, 12 (1970)).

In this case, no sanction is needed or justified. First, as in *Staples*, there is no allegation or evidence that Niemi did not conscientiously perform her duties as a judge pro tempore. *Staples*, 105 Wn.2d at 910.

Second, as discussed in connection with Canons 1 and 2(A), the constitutional requirement of the consent of the parties to a judge pro tempore eliminates any appearance of impropriety.

Lastly, the third policy concern is directed primarily at the resign-to-run requirement of Canon 7(A)(3) which seeks to prevent embroiling the court in political controversy and allowing a judge to trade on the prestige and dignity of the judicial office. *See* J. Shaman, S. Lubet & J. Alfini § 11.19, at 357; E. Thode, *Reporter's Notes to Code of Judicial Conduct* 97 (1973). There is no allegation or evidence Niemi is trading the dignity and prestige of her case-by-case service as a judge pro tempore in her office as a state senator. There is also no allegation or evidence the King County Superior Court has been or will be involved in political controversy based upon issues before Niemi as a state senator. To the extent the third policy reason is not grounded in the resign-to-run requirement, the requirement of the consent of the parties neutralizes any impairment to the dignity and esteem of the court.

Moreover, the original text of Const. art. 4, § 7 expressly contemplated that members of the bar would serve as judges pro tempore. *See Journal of the Washington State Constitutional Convention, 1889*, at 613 (B. Rosenow ed. 1962). The framers required litigant consent which avoids any appearance of bias. Furthermore, with such consent there can be no appearance of impropriety or partiality when a member of the bar who is serving as a judge pro tempore holds the status of a state senator. We emphasize that allowing such dual service is not based upon expediency, as asserted by the Commission; it is a circumstance arising from a constitutionally allowed practice.

In summary, Niemi's dual service is not contrary to the rationales which the Canon 7(A) prohibitions against political activity seek to protect, and no proper purpose would be served by forbidding such service.

■ The remaining issue is whether the doctrine of separation of powers would be eroded if Niemi were brought before the Commission for censure while she retained her status as a state senator. At oral argument, the Commission conceded the doctrine of separation of powers was not violated. We agree and concur with the Court of Appeals analysis of a similar issue in *State v. Osloond*, 60 Wn. App. 584, 590-91, 805 P.2d 263 (1991), wherein it concluded:

> [W]e hold that, in this instance, Niemi's serving as a judge pro tempore did not violate the separation of powers doctrine. As noted above, the Washington Constitution contains no express provision prohibiting legislators from being appointed as judges pro tempore. Utilizing the holding in *Mistretta* [*v. United States*, 488 U.S. 361, 102 L. Ed. 2d 714, 109 S. Ct. 647 (1989)], it can be said that when Niemi presided over Osloond's trial, she did so, not as a Washington state senator, but as one temporarily performing the functions of a judge appointed by the presiding judge and agreed to by the parties.
>
> In addition, analogizing to the discussion in [*Smith v.*] *Mount*[, 45 Wn. App. 623, 726 P.2d 474, *review denied*, 107 Wn.2d 1016 (1986)], there is no showing that Niemi's dual role interfered in this instance with either her legislative role or her judicial role, or that she wore "two hats" at the same time. Thus, there was no violation of the separation of powers doctrine.

Similarly in this case, when Niemi went before the Commission for censure, she was there in her role as a judge pro tempore, not her role as a legislator. The Commission presented no evidence Niemi's dual service interfered with her role as legislator or judge pro tempore, nor with the Commission's function in this or any other case. To the extent conflicts of interest arise, Niemi may recuse herself from those decisions when appropriate.

We hold Niemi's dual service as a state senator and a judge pro tempore does not violate Canons 1, 2(A), 7(A)(1), 7(A)(3), or 7(A)(4) and further find no violation of the doctrine of separation of powers. Because of our decision on these issues, we do not address Niemi's exceptions to the Commission's findings of fact or the due process challenge

to the imposition of the sanction. The Commission decision censuring Niemi and ordering her to discontinue service as a judge pro tempore is hereby reversed.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.