75 P.3d 950 (2003)
150 Wash.2d 159
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Steven MICHELS, Municipal Court Judge.
No. 72857-7.
Supreme Court of Washington, En Banc.
Argued January 16, 2003.
Decided September 4, 2003.
*951 Steven Michels, Pro se.
Talmadge & Stockmeyer, Philip Talmadge, Tukwila, Louie Delorie, Yakima, for Petitioner.
Ernest Greco, Spokane, Edwards, Sieh, Smith & Goodfriend, Catherine Smith, Seattle, for Respondent.
Aaron Hugh Caplan, Seattle, Amicus Curiae on behalf of ALCU.
Mark Allen Kunkler, Sunnyside, Amicus Curiae on behalf of City of Sunnyside.
JOHNSON, J.
Part-time municipal court Judge Steven Michels challenges a recommendation of the Commission on Judicial Conduct (Commission) ordering censure and suspension without pay for 120 days. The Commission found Judge Michels to have violated the Code of *952 Judicial Conduct (CJC) Canons 1, 2(A), 3(A)(1), and 3(D)(1) by acting as both judge and lawyer in the same case, by failing to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary, by failing to disqualify himself as a judge in cases in which he had previously served as a lawyer, by failing to enforce high standards of judicial conduct, and by failing to be faithful to the law and maintain professional competence. Judge Michels admits he engaged in the alleged conduct but argues that the punishment is excessive. We agree with the Commission's recommendation and order censure and a 120-day suspension from the bench without pay. Additionally, Judge Michels will not be allowed to resume judicial duties until he has completed a course approved by the Commission or the State Judicial College for judges in limited jurisdiction courts.

FACTS
Steven Michels has represented clients in the Yakima valley in misdemeanor criminal and general business matters for the past 27 years. In addition to his private practice, Michels has served as municipal court judge for the town of Sunnyside since 1986. Soon after Judge Michels was appointed to the bench, he agreed to serve as judge pro tempore of the Toppenish Municipal Court. Judge Michels and Judge Ramon Reid, a judge in Toppenish Municipal Court, agreed to substitute for one another at no charge to Sunnyside or Toppenish, when either judge was unavailable to preside. The agreement saved money for both communities, as neither could afford to pay judges pro tempore. In 1991, Judge Michels bid for and won the contract to become the Toppenish public defender. As of 1996, Judge Michels received $75 for each person he represented as public defender.
The case before the court began with an anonymous complaint against Judge Michels and Judge Reid which was filed with the Commission on March 5, 1998. The complaint alleged Judge Michels was acting as judge over defendants who were his clients. The second complaint was lodged by Vernon Holden on December 30, 1998. In his complaint, Mr. Holden reported that, over his objection, Judge Michels served as his court appointed attorney after he had presided as judge over a previous case in which he was the defendant.
In early January 2000, the Commission notified Judge Michels it was initiating proceedings to investigate possible violations of the Judicial Canons prohibiting a judge from presiding over cases in which he has served as counsel or representing a party whom he had previously presided over as judge. At this time, Judge Michels denied any wrongdoing and claimed the complaints lodged against him were a political vendetta in response to his opposing the closure of the lower Yakima valley district courts in 1997. The Commission investigation continued until June 6, 2001. During the investigation it was discovered that between 1998 and 2001, Judge Michels presided as judge pro tempore in Toppenish Municipal Court over numerous criminal defendants whom he had also represented as a lawyer. The investigation also revealed that Judge Michels commonly accepted guilty pleas without advising the defendants of the elements of the crime or obtaining proper written plea statements per CrRLJ 4.2. The Commission informed Judge Michels of the findings at the conclusion of the investigation. Judge Michels again denied any wrongdoing.
On August 27, 2001, the Commission filed its statement of charges alleging Judge Michels had violated Canons 1, 2(A), 3(A)(1), 3(D), 5(C)(1), and Application section (A)(2)(b) preceding Canon 1 of the CJC. Judge Michels and disciplinary counsel then agreed to stipulate to a letter of reprimand, subject to approval by the Commission. After reviewing the proposed stipulation and facts surrounding the case, the Commission rejected the stipulation and advised the parties that censure and a 90-day suspension were appropriate. Judge Michels disagreed with the Commission's position, and the matter proceeded to a hearing before the Commission.
On October 25, 2001, Judge Michels filed his answer to the statement of charges in which he denied the conduct leading to the charges, and alleged that the conduct described *953 in the charges did not violate the Canons. On December 6, 2001, Judge Michels again denied each of the 74 requests for admission by disciplinary counsel. During his deposition six days later, when faced with the record, he admitted to all the requests for admission he had previously denied. Judge Michels later stipulated to all the facts as stated in the amended statement of charges. Although he admitted the judicial canons require a judge to disqualify himself if he has previously served as counsel for a defendant, and that he would never serve in dual roles again, Judge Michels continued to claim it was appropriate to pass judgment over a defendant once he had been dismissed as counsel.
At the hearing before the Commission in April 2002, documentary evidence was presented which showed 12 cases in which Judge Michels served as defense counsel and judge for the same defendant, and 8 cases in which he failed to ensure a defendant submitting a guilty plea was informed of the elements of the crimes for which they were being charged. Judge Michels responded by stating that he now knew what he had done was wrong, but he believed at the time the Canons allowed him to act as both judge and lawyer if the defendant agreed to it. He additionally maintained that as judge pro tempore he had no responsibility for the faulty guilty plea forms of another jurisdiction.
The Commission ultimately found that Judge Michels' failure to abide by Canons 1, 2(A), 3(A)(1), and 3(D)(1) deprived defendants of their constitutional rights to representation and to knowingly and intelligently enter guilty pleas. In light of these serious violations, the Commission recommended censure and a 120-day suspension from the bench without pay. Judge Michels claims the sanctions are excessive and seeks a lesser punishment than recommended by the Commission.

ANALYSIS
At issue is whether censure and a 120-day suspension without pay are the appropriate disciplinary sanctions for a part-time judge who accepted guilty pleas from defendants whom he represented as a public defender, and who accepted guilty pleas without obtaining proper written plea statement due to defective plea forms supplied by the court he was temporarily serving. Specifically, we must determine the appropriate sanctions for a judge who has violated Canons 1, 2(A), 3(A)(1), and 3(D)(1) of the CJC. Additionally, Judge Michels claims the Commission violated his due process rights by failing to file the charges in a timely manner and that disciplinary counsel committed prosecutorial misconduct during the hearing.
The Commission bears the burden of proving all alleged ethical violations by clear, cogent, and convincing evidence. In re Disciplinary Proceeding Against Sanders, 135 Wash.2d 175, 181, 955 P.2d 369 (1998). The court reviews the Commission's decisions de novo. Sanders, 135 Wash.2d at 181, 955 P.2d 369. In determining the appropriate punishment, the court gives "serious consideration" to the Commission's recommendations. In re Disciplinary Proceeding Against Ritchie, 123 Wash.2d 725, 731, 870 P.2d 967 (1994). "The Supreme Court may impose the sanction recommended by the commission, or any other sanction that the Supreme Court deems proper." DRJ 9(c).
Judge Michels and the Commission agree there is clear, cogent, and convincing evidence that he presided over cases in which he had previously served as defense counsel, that he improperly accepted guilty pleas and in doing so violated several judicial Canons. The question then becomes what are the appropriate sanctions for such actions.
We have adopted the following list of factors which are to be considered when imposing sanctions:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct;
(b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify *954 his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In re Disciplinary Proceeding Against Denting, 108 Wash.2d 82, 119-20, 736 P.2d 639 (1987).
The dissent improperly shifts the focus of the analysis onto the conduct of the Commission and speculates that the Commission's delay contributed to the continued acts of misconduct. If the delay had prejudiced Judge Michels in some way or allowed additional misconduct to occur thereby increasing the seriousness of this case, certainly that would be the basis for mitigating the sanction. Judge Michels ultimately stipulated to the misconduct which negates any claim of prejudice, and the record does not support the speculation of the dissent.
More troubling about the focus of the dissent's analysis is that it minimizes the effect of the misconduct on Judge Michel's clients. Every person charged with a crime possesses certain constitutional and due process rights. Most fundamental of these rights include the right to an attorney and the right to be advised of your rights in a way to be able to make informed decisions regarding your case. Judge Michels agrees that his actions in this case deprived his clients of their rights. Part of the focus of the analysis of the appropriate sanction for this misconduct centers on the actions which deprived individuals of their rights.
We have established that we will not and cannot tolerate any actions that do not comply with fundamental principles of due process. No shortcuts exist and any judicial officer, be he or she part-time, pro tern., or full-time must adhere to these principles in order that individuals who are charged with crimes are afforded the constitutional protections they are entitled to.
A. Whether the judge's misconduct was isolated or pattern of conduct
As evidenced by the record and the stipulated facts, Judge Michels' conduct was not an isolated event but rather a pattern. The Commission found 12 cases in a two and one-half year period, August 1998 to February 2001, in which Judge Michels deprived defendants of their constitutional rights by acting as both judge and defense counsel, and eight instances where he failed to use proper guilty plea forms. Judge Michels does not dispute these acts occurred repeatedly over the two and one-half year period.
B. The nature, extent, and frequency of the conduct
As the record indicates, Judge Michels served as Toppenish Municipal Court judge pro tempore and Toppenish public defender for a period of 10 years. Judge Michels' choice to act in dual roles in the same court forced his low-income clients to choose between having representation or getting out of jail. An example of this is shown in City of Toppenish v. Santos Rivas, Nos. C00006564, C00006565, C00006566, (Toppenish Municipal Court September 13, 1999). Judge Michels was appointed as attorney for Rivas on August 17, 1999. Less than one month later, on September 13, 1999, Judge Michels presided over a hearing in which he entered findings of guilt on two counts in each case and sentenced Rivas to 540 days, with all but 12 suspended, and fined Rivas $4,560, with $2,300 suspended. Rivas had been in jail for two days and had been unsuccessful in contacting Michels, his lawyer. When he arrived in court he found his lawyer was now his judge. A transcript of the Rivas case was admitted during the hearing before the Commission. It shows that Rivas was unsure of what his rights and status before the court were and was unsure about seeking advice from Judge Michels, who was his attorney of record. Judge Michels, while sitting as judge, essentially talked Rivas into firing him as his attorney and pleading guilty to all the charges. If Rivas did not follow Judge Michels' recommendation, he would have gone back to jail until the appointed judge of Toppenish Municipal Court could preside, possibly up to two weeks.[1] At no *955 time did Judge Michels offer Rivas the alternative of appointment of new counsel or remind Rivas of his right to have counsel present. Rather, Judge Michels pressed Rivas to proceed without a lawyer or go back to jail. The Commission uncovered 12 such cases. Judge Michels' only explanation of his conduct was that it was his impression that once he was dismissed as defense counsel he could serve as judge and sentence his former clients.
The United States Supreme Court has made it clear that a fundamental principle of our criminal justice system is that counsel must be provided for individuals who cannot afford their own. Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Gideon dealt with a state court's refusal to appoint counsel for an indigent accused of a noncapital felony. We recognized this when holding the right to counsel shall extend to all criminal proceedings for offenses punishable by loss of liberty regardless of whether they are felonies or misdemeanors. McInturf v. Horton, 85 Wash.2d 704, 705, 538 P.2d 499 (1975); CrR 3.1(a). A criminal defense attorney, whether appointed or retained, has a duty to zealously and diligently defend his or her client. This includes openly and honestly communicating with the client, investigating the circumstances surrounding the charges, filing motions, interviewing and subpoenaing witnesses, and preparing a defense. Most importantly, the attorney needs to make sure the client is properly advised of his or her rights when entering a plea of guilty. In doing this, the attorney needs to make sure that a plea is entered knowingly and voluntarily and that the defendant is aware of any rights he or she is giving up. Judge Michels denied defendants this right when he forced them to choose between their right to counsel or extra jail time. It is the job of a public defender to protect the rights of his or her clients, just as it is the responsibility of the judge to see that justice is carried out. The fact Judge Michels disregarded both duties is a serious offense and calls for a stern response.
With respect to the faulty guilty plea forms, we analyzed this exact issue in a similar setting in In re Disciplinary Proceeding Against Hammermaster, 139 Wash.2d 211, 985 P.2d 924 (1999). In Hammnermaster, we recognized that all courts must provide equal justice, regardless of size and situation, and that short cuts in due process are not tolerated. We further reiterated the principle that a judge has a duty to ensure that guilty pleas are knowingly, voluntarily, and intelligently made. This is also true of a court-appointed attorney or public defender. This ensures that defendants are apprised of the essential elements of the crime and the range of punishment they may receive before entering a plea. This standard applies to regular judges as well as pro tern, judges. When a lawyer is sitting as a judge, he or she has an obligation to comply with the law regardless of whether he or she is full-time, part-time, or pro tem. Under the Canons, the judge's duty is to be faithful to the law and maintain judicial and professional competence. The fact these actions occurred in a rural setting is no defense. Nor does it matter that this occurred while Judge Michels was acting as a pro tempore judge in another jurisdiction. Short cuts around constitutional and statutory requirements and other conditions of due process are unacceptable and are not tolerated in any court by any judicial officer. It was Judge Michels' independent responsibility as judge to ensure that the forms were correct. It is ultimately the duty of the judge to make sure the guilty plea forms are correct, in order to ensure each defendant is aware of his or her rights and that these rights are protected. Judge Michels failed in this duty.
C. Whether the conduct occurred in the courtroom, whether the judge was acting in his official capacity, the effect the misconduct has upon the integrity and respect of the judiciary
Both parties agree that all of the conduct in question occurred while Judge Michels was serving as judge pro tempore in Toppenish. A judge pro tempore is subject to the same standards as a regular judge. In re Disciplinary Proceeding Against Niemi, 117 Wash.2d 817, 820 P.2d 41 (1991). The Code of Judicial Conduct requires judges to disqualify themselves in any proceeding *956 in which their impartiality may reasonably be questioned. Canon 3(D)(1)(b) requires the same must be done if the judge previously served as a lawyer. Judicial integrity is sacrificed if the canon is violated and the appearance of fairness is ignored.
Judge Michels' conduct strikes at the heart of principles on which our system is based. By repeatedly presiding as judge over his current or former clients whom he served as a public defender, Judge Michels violated the defendants' basic constitutional due process rights. Courts of limited jurisdiction serve as the window to the judicial branch for many people who do not normally have contact with the judicial system. The fact that each time Judge Michels took the bench in Toppenish and announced that he would try to accommodate defendants who were his clients casts serious doubt on the public perception of the judiciary. Further, when Judge Michels made his clients choose between their right to counsel and their freedom, he disregarded the very rights he is sworn to protect as a judge and as a lawyer.
D. Whether the judge has acknowledged that the acts occurred
While Judge Michels did deny any wrongdoing for the majority of the investigation, he did admit to the charges against him during his deposition.
E. Whether the judge has made an effort to change or modify his conduct.
When the Commission filed its statement of charges in August 2001, Judge Michels resigned from his position as judge pro tempore in Toppenish and testified that the faulty guilty plea forms had been remedied to be in compliance with the law. However, the Commission notified Judge Michels of the nature of the allegations on January 11, 2000, and he continued to pass judgment over his former clients, continually denying he was doing anything wrong. The dissent's argument that Judge Michels would have stopped had the charges been filed earlier is not supported by the record in this case. Contrary to the dissent's assertion, we find no support in the record establishing that Judge Michels made any effort to change or modify his conduct at the time he was initially made aware of the allegations.
F. Length of service on the bench.
Judge Michels has been a municipal court judge in Sunnyside since 1986 and had served as judge pro tempore in Toppenish for the majority of the past 16 years. During that time, we released our decision in Hammermaster and other cases affecting the judiciary and judicial duties. Any experienced jurist, like Judge Michels, is required to be well versed in the laws of Washington, the CJC, and all legal requirements. The fact that Judge Michels failed to keep current on the status of the law in spite of his years of service on the bench is troublesome. Sixteen years is a considerable amount of time to sit on the bench. Judge Michels owed it to the community where he served to abide by the laws of Washington, the rules outlined by this court, and our state constitution.
G. Whether there have been prior complaints about the judge
Judge Michels had one prior complaint against him which had no bearing on our disposition.
H. The extent to which the judge exploited his position to satisfy his personal desires
Judge Michels served as judge pro tempore for Toppenish without compensation. While he and Judge Reid did have an agreement to substitute for each other, the motivation behind Judge Michels' actions was not a desire to promote his well-being. While Judge Michels' intentions may have, in his mind, been honorable and were intended to serve his clients by expediting their release from jail, denying those clients their constitutional rights is unacceptable.

SANCTIONS
A careful analysis of the pattern of conduct according to the factors above supports the Commission's recommendation of censure and suspension of Judge Michels. The protection of due process rights for criminal *957 defendants requires strict compliance with the Canons of Judicial Conduct. Repeated violations are serious and warrant sanctions.
A majority of the Commission found Judge Michels in violation of Canons 1, 2(A), 3(A)(1), and 3(D)(1) and ordered censure, a 120-day suspension without pay, and attendance at a judicial education class. We find no reason for a departure from the Commission's recommendation. Judge Michels violated the due process rights of each individual when he acted as both judge and attorney. Improperly accepting guilty pleas also denied defendants their rights.
In Hammermaster, the violations and misconduct were similar to this situation. Faulty guilty plea forms were used, and we held that the violation deprived defendants of their due process rights. We held that this type of action was unacceptable and a violation of Canon 3(A)(1). Judge Hammermaster was ultimately censured, suspended for six months, and ordered to take a corrective course. The Commission properly held that Judge Michels' violations of the Canons warranted suspension, and we agree.
Judge Michels agreed that the violations of the Canons occurred. Therefore, any claim that misconduct or delay affected the Commission's determination fails because no prejudice can be shown. While the dissent points out that it took nearly two years for the Commission to notify Judge Michels of the allegations against him, the record reflects that, after Judge Michels received notification of his possible violations of the Canons, he did nothing to prevent further violations. Rather, he continued to act in a dual role in City of Toppenish v. Collette R. Patrick, No. C00007555 (Toppenish Municipal Court February 20, 2001) and City of Toppenish v. Juan A. Salcedo, No. C00003683 (Toppenish Municipal Court February 22, 2001). And while the Commission may have acted slower than normal, the bulk of the cases (seven) dealing with Judge Michels acting as judge over his former clients occurred between August 23, 1998 and January 27, 1999, a period of five months. During that period the Commission received its first complaint from an identifiable client of Judge Michels, Vernon Holden. This time period is not unreasonable in this case. Judge Michels has not established that any delay contributed to the additional acts of misconduct or merit a reduced sanction. Further, our review is de novo and our analysis factors out any claim of misconduct or delay, even if we were to find any existed. We find no prejudice to Judge Michels that affects our determination.

CONCLUSION
Our legal system is based on the foundation that an independent, unbiased, and competent judiciary will interpret and apply the laws that govern us. This is paramount to the American concept of justice and fairness. Central to our system is the belief that judges will respect and honor their office and the laws they are sworn to protect. If judges fail to follow the law, in turn, the system fails to protect the people.
The rights of the poor and indigent are the rights that often need the most protection. Each county or city operating a criminal court holds the responsibility of adopting certain standards for the delivery of public defense services, with the most basic right being that counsel shall be provided.[2] The fact that this was side-stepped by Judge Michels and the Toppenish Municipal Court is most troubling. Disregarding our most basic and important principles weakens the legal system as a whole. In light of this, we again find it necessary to reiterate that this court will not tolerate short cuts to due process. In the past few years we have been confronted *958 with this problem on more than one occasion. This court has the authority to see that justice is achieved in all courts in this state. When justice fails at any level, it is our duty to remedy the situation in the most appropriate manner.
Judge Michels violated Canons 1, 2(A), 3(A)(1), and 3(D)(1), and denied numerous defendants their constitutional rights.[3] His actions warrant suspension. Therefore, we order censure, suspension without pay for 120 days, and attendance of a judicial education approved by the Commission or the State Judicial College.
ALEXANDER, C.J., and MADSEN, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
That Judge Michels engaged in two systemic violations of the Code of Judicial Conduct is not disputed: (1) the judge failed to disqualify himself in matters where he currently, or previously, acted as an attorney contrary to CJC Canon 3(D)(1)(b); and (2) he utilized guilty plea forms which failed to fully inform defendants of their rights contrary to CJC Canon 2(A) as well as other ethical requirements. I dissent, however, because our majority fails to properly apply the Denting[1] factors and has deferred to the Judicial Conduct Commission's recommended 120-day suspension without pay absent meaningful analysis of the methods and procedures employed by the Judicial Conduct Commission to reach that result.
First, by way of general observation, I note that there is no suggestion in this record that Judge Steven Michels is anything other than an honorable man who has attempted, at all times, to fulfill his duties as a judicial officer in good faith and, in many ways, with distinction.[2] The ethical violations at issue here resulted from ignorance, not malevolence. More fundamentally, they were understandable, yet still not pardonable, attempts to accommodate systemic flaws of which the judge was not fully cognizant at the time. For example he attempted to reconcile his dual role as an appointed defense counsel and a pro tern municipal court judge in Toppenish by attempting to avoid presiding over his own clients and/or inviting them to somehow waive the conflict. Similarly, Judge Michels utilized a defective plea form not of his making and without realization of its defects until it was brought to his attention.
As persuasively brought forth in the Amicus Brief of the American Civil Liberties Union of Washington (ACLU), these two systemic problems are not trifling matters but go to the heart of the judicial system. Id. at 3-19. However, I also agree with the ACLU that recognition of the gravity of the problem does not necessarily dictate the severity of the sanction to be applied against the judge. Here I note as soon as the Judicial Conduct Commissionmost belatedlybrought its initial and amended statement of charges respectively, Judge Michels corrected his actions by resigning as pro tem. judge in Toppenish and abandoned his use of the defective guilty plea form immediately upon first notification of the problem.
Judge Michels did, however, make a mistake when he failed to comply with the Code of Judicial Conduct, and that mistake must be appropriately sanctioned after a full and careful analysis of all the circumstances.
First and foremost, I feel constrained to comment on the conduct of the Judicial Conduct Commission itself. The initial complaint *959 regarding failure to recuse from hearing cases involving his own clients was filed on March 5, 1998. However, it was not until January 11, 2000, nearly two years later, that the Commission even notified Judge Michels of the pendency of that complaint, and the Commission waited until August 27, 2001 to file charges, and not until July 15, 2002 did the Commission issue a final order.[3] It was during that interim three year and five month period prior to the initial statement of charges that each and every specifically alleged incident of improper failure to recuse occurred.
When the majority says that there was no prejudice to the judge for this unconscionable delay, it obviously ignores our pointed language in In re Disciplinary Proceeding Against Deming, 108 Wash.2d 82, 100-101, 736 P.2d 639 (1987):
However, when an allegation of judicial misconduct has been made against a judge, two considerations come into play. If the allegations have merit as a violation of the Code of Judicial Conduct, they should be speedily investigated and a formal complaint filed. If the allegations are without merit, they should be speedily dismissed. A judge who is violating the Code of Judicial Conduct should be disciplined as soon as possible so that the inappropriate practice will be stopped. A judge who is unfairly accused has a right to a prompt resolution of the allegations considered under JQCR 5 and to a prompt investigation under JQCR 6.
(Emphasis added.)
If the Judicial Conduct Commission had acted promptly in 1998 to file a formal complaint against Judge Michels, I posit it is more than likely, on this record, that Judge Michels would have acted in the same way he did when he ultimately received the statement of charges against him: resign his pro tem judge position. Therefore the Commission not only prejudiced Judge Michels in the way indicated but was ultimately and fundamentally in dereliction of its duty to protect the public by delaying more than three years and five months between receiving a citizen's complaint and filing the initial statement of charges.
A similar criticism finds fertile ground with respect to the Commission's decision not to inform Judge Michels promptly of the use of improper guilty plea forms. Literally thousands of instances relating to these forms could have been avoided had the Commission acted with reasonable dispatch once it was aware of the inaccuracy.[4] A simple phone call to the judge probably could have cured this problem which was not of his making as he in fact did stop using the improper forms upon first notice of a citizen's complaint.[5]
I am also troubled about other aspects of the proceeding against Judge Michels after a statement of charges had been filed against him by the Judicial Conduct Commission but before final resolution of the case.
It appears there was negotiation between the judge and disciplinary counsel regarding a stipulated reprimand (without suspension) which was executed by Judge Michels and disciplinary counsel by September 19, 2001. On October 3, 2001, however, the Commission rejected the stipulation, recommending 90 days' suspension, a sanction unacceptable to Judge Michels. Thereafter the judge moved that members of the Commission who had rejected the stipulation be recused from further proceedings in the case. However in an ironic turn of events, all but one declined to recuse, ultimately sanctioning Judge Michels not 90 days but 120 days. During that *960 interim Judge Michels issued two press releases indicating his displeasure with Commission proceedings against him, which followed earlier press releases issued by the Commission itself, publicizing its unproved case against the "Sunnyside Municipal Judge Steven Michels," notwithstanding the fact that no misconduct was alleged with respect to the deportment of his Sunnyside duties.
The Commission issued yet another press release after it had finally terminated the proceeding, and on October 7, 2002 the Seattle Times published an article attributing statements to an investigating attorney for the Commission which characterized rural courts of limited jurisdiction as "`personal fiefdoms'" of rural judges acting with a "`white heart and an empty head.'" Br. of Commission on Judicial Conduct at App. 2. And the Commission purports to uphold the dignity of the judiciary?
While I question whether the Commission is doing more harm than good to public perceptions of the judiciary through its negative press campaign, I have no question that Judge Michels had every First Amendment right to characterize the Commission proceeding against him as he saw fit in the public media. Any effort to sanction him, or aggravate the penalty against him, for this free speech activity is intolerable. Unfortunately there is good reason to believe the Commission engaged in retribution for exactly this reason as it states in its written opinion, in a rather backhanded fashion, that the newspaper articles were not considered as an aggravating factor but rather as an indication that a mitigating factor (that he acknowledged his acts) was absent.[6]
On this record it appears from the outset that Judge Michels generally admitted the "acts" did in fact occur (Deming factor (e), Deming, 108 Wash.2d at 120, 736 P.2d 639), although at times he disputed the legal consequence of those actions, leading Judge Schultheis in dissent from the commission decision to state:
The majority finds fault with the Respondent for denying the allegations raised by the Commission, until shortly before the hearing. I do not agree that the exercise of one's rights, by requiring the Commission to prove the allegations, should be considered an aggravating factor when determining what sanctions, if any, should be imposed.
I Commission Papers at tab 91 (dissenting opinion at 1).
Whether one considers press reports chastising the Commission as an aggravating factor, or simply evidence disproving a mitigating one, seems little more than semantics. Either way the sanction is either increased or not mitigated when it should have been.
Then there remains the question of what guidance, if any, In re Disciplinary Proceeding Against Hammermaster, 139 Wash.2d 211, 985 P.2d 924 (1999) lends to this case? The distinction is well set forth in the City of Sunnyside amicus curiae brief. It observes virtually the only commonality between these cases is the use of an improper guilty plea form. Unlike Judge Michels, the judge in the prior proceeding was also charged with abusing his authority and exhibiting a disrespectful and undignified demeanor,
by threatening defendants with life imprisonment or indefinite jail sentences; routinely ordering Spanish-speaking defendants to enroll in English courses, become citizens or leave the country; issuing or threatening to issue orders beyond his legal authority as a municipal court judge; and making statements or issuing orders that denigrate unmarried individuals who lived together.
Hammermaster, 139 Wash.2d at 215, 985 P.2d 924. Judge Hammermaster also conducted trials in absentia. Id.
*961 No, I do not think the case against Judge Michels has much to do with the decision in Hammermaster.
In terms of appropriate sanction against Judge Michels, what is to be done? Considering the systemic nature of the problem which was corrected immediately upon filing of the statement of charges, considering his complete absence of selfish motive or malicious intent, considering that Judge Reid (the regular judge of the Toppenish Municipal Court who had primary responsibility for developing the defective guilty plea form) was given an admonition, considering the anguish[7] that Judge Michels has already sustained during the course of this unduly protracted litigation,[8] I would reduce the sanction to an admonition.
NOTES
[1] Presumably at that time Michels would be representing Rivas.
[2] RCW 10.101.030 further outlines the standards a county or city operating a criminal court shall incorporate into a public defender contract or office. The standards include:

"[c]ompensation of counsel, duties and responsibilities of counsel, case load limits and types of cases, responsibility for expert witness fees and other costs associated with representation, administrative expenses, support services, reports of attorney activity and vouchers, training, supervision, monitoring and evaluation of attorneys, substitution of attorneys or assignment of contracts, limitations on private practice of contract attorneys, qualifications of attorneys, disposition of client complaints, cause for termination of contract or removal of attorney, and nondiscrimination."
[3] All of the misconduct present it this case was stipulated to by both the Commission and Judge Michels. We focus the majority of our discussion on the dual representation charges. While the dissent analyzes the impact of the improper guilty plea forms, it should be noted that those violations neither add nor subtract from the appropriate sanction levied against Judge Michels, even though it is agreed that they occurred.
[1] In re Disciplinary Proceeding Against Deming, 108 Wash.2d 82, 119-20, 736 P.2d 639 (1987).
[2] The City of Sunnyside has only praise for Judge Michels, stating that his "demeanor on the bench is beyond reproach" and that his "record on the bench has been excellent." Br. of Amicus Curiae City of Sunnyside at 5, 7-8. The City Council of Sunnyside also passed resolution No.2002-8 on January 21, 2002, giving its full support to Judge Michels. Id. at Appendix.
[3] It took the Commission four and one-third years to issue a decision. This delay is unprecedented compared to other cases. In re Disciplinary Proceeding Against Hammermaster progressed from complaint to decision in little more than two years. 139 Wash.2d 211, 214, 216, 985 P.2d 924 (1999). For Deming a mere six months passed between the start of the investigation and filing of the complaint. 108 Wash.2d at 100, 736 P.2d 639.
[4] At the hearing before the Commission, Judge Michels opined that the Toppenish District Court used the defective guilty plea form 5,300 times a year. Record of Proceeding (RP) at 83.
[5] Judge Michels alluded that he would have corrected his conduct had he received a simple phone call: "I think the commission maybe should give the judge a call and say, hey, judge, we got a complaint.... Why don't you check it out?" RP at 83.
[6] First, the Commission did not consider Respondent's denial of the allegations of the Statement of Charges to be an aggravating factor. Whether the judge has acknowledged or recognized that the acts occurred may be a mitigating factor. The Commission commented on the manner in which respondent conducted his defense, including a blanket denial of requests for admissions that he later admitted in full, and newspaper statements as set forth above, only in the context of whether this mitigating factor was present.

I Commission Papers at tab 91 (commission decision at 18) (emphasis added).
[7] Judge Michels awoke on January 14, 2002 at 3:00 A.M. with shortness of breath. He was admitted to Sunnyside Hospital shortly thereafter and diagnosed with congestive heart failure, the cause of which appeared to be stress related. Aff. of Alayne Michels at I Commission Papers at tab 55. Judge Michels wrote in his response to the Commission that for the last year and a half he woke up at 3:00 A.M. worrying about the Commission's actions. II Commission Papers at tab 43.
[8] Initial complaint filed March 5, 1998, final decision of the Commission July 15, 2002, decision by Washington Supreme Court, September 4, 2003.